# Exhibit H 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BARCLIFF, LLC, d/b/a RADCLIFF/ ECONOMY MARINE SERVICES,  :<br><br>    Plaintiff,  :<br><br>vs.  :<br><br>M/V DEEP BLUE, IMO NO. 9215359, her engines, apparel, furniture, equipment, appurtenances, tackle, etc., *in rem*,  :<br><br>    Defendant. | CA 14-0590-C<br>(ADMIRALTY) |

## ORDER AND SUPPLEMENTAL SCHEDULING ORDER

This matter is before the Court on the motion of intervenor ING Bank N.V. to amend the Rule 16(b) scheduling order (Doc. 41) and what to do about the pending motion for summary judgment filed by plaintiff Barcliff, LLC (Doc. 35; *see also* Doc. 43 (motion and memorandum of law of intervenor ING Bank to deny plaintiff's motion for summary judgment without prejudice to renewal)). As a backdrop for its rulings, the Court need explain the procedural history of this case at no small length.

## PROCEDURAL HISTORY

Barcliff, LLC filed a verified complaint in this Court against the M/V DEEP BLUE on December 19, 2014, seeking to recover amounts due and owing to it under a maritime contract to supply bunker fuel to the vessel, more specifically $699,550.00 plus interest and fees. (Doc. 1, ¶¶ 7 & 19; *see also id.*, ¶¶ 8 & 11-12 ("On or about October 23, 2104, an entity named O.W. Bunker USA, Inc. [], which was acting as agent for the DEEP BLUE, contracted with Barcliff to supply 850 metric tons of bunker fuel to the Vessel. . . . On November 1, 2014, Barcliff issued invoice #204152 to O.W. Bunkers for

the delivery in the principal amount of USD $699,550.00. . . . Under the 30-day payment term of the Purchase Order and the terms of Barcliff's invoice, the payment deadline for the delivery was December 1, 2014. As of the date of filing this Complaint, Barcliff has not received any payment. Consequently, the Vessel and its agent are in breach of the Sales Agreement.").) Although Barcliff, concurrent with the filing of the complaint, also filed a motion for issuance of an arrest warrant (Doc. 2), the parties ultimately agreed—on December 23, 2014—to the substitution of a cash bond in lieu of arrest of the vessel. (*Compare* Docs. 8 & 10 *with* Docs. 6 & 7.) The cash bond paid into the registry of this Court totaled $705,529.50. (Doc. 11.)

The preliminary scheduling order entered on December 23, 2014, instructed the parties to file their Rule 26(f) report by February 5, 2015. (Doc. 9.) No action was taken in this case by the parties until the defendant's February 2, 2015 filing of an unopposed motion for confirmation of applicability of Local Admiralty Rule 6 to any intervening lienholders. (Doc. 12.) That motion was set down for a hearing—to take place on February 12, 2015 (Doc. 13)—and, thereafter, the parties filed their initial Rule 26(f) report on February 10, 2015 (Doc. 14). In this initial report, the parties indicated that discovery (of approximately 3 months) was needed on a number of subjects—including the relationship between Barcliff, the vessel, OW Bunkers (both UK and USA), ING, and PricewaterhouseCoopers LLP—and that settlement was likely "but may be dependent on the participation of OW Bunkers (UK), OW Bunkers USA, and/or ING[.]" (Doc. 14, at ¶¶ 4 & 11.) Following the scheduled hearing on February 12, 2015—during which participating counsel suggested that it was likely that no party would intervene in this matter—the parties filed a supplemental Rule 26(f) report on February 25, 2015, which is different from their initial report only with respect to the subjects upon which

discovery would be needed (*see* Doc. 16, at ¶ 4; *compare id. with* Doc. 14, ¶ 4)[1] and Paragraph 6 and the application of Local Admiralty Rule 6 (*see* Doc. 16; *compare id. with* Doc. 14, at ¶ 6). One day after the filing of the supplemental Rule 26(f) report, that is, on February 17, 2015, the Court entered its Rule 16(b) scheduling order (Doc. 17) and retained many of the dates set forth by the parties in their report (*compare id.* at ¶¶ 4, 6 & 12 *with* Doc. 16, ¶¶ 5, 7 &10 (initial disclosure deadline, expert testimony deadlines, and dispositive motion deadlines identical)) or, otherwise, chose dates very close to the dates suggested by the parties (*compare, e.g.,* Doc. 17, ¶ 3 (setting a discovery completion deadline of May 18, 2015) *with* Doc. 16, ¶ 4 (parties' request for a discovery completion date of May 1, 2015)).

The Court's Rule 16(b) scheduling order also set forth a date—April 15, 2015—for any amendment of the pleadings or for any other party to file a complaint in intervention (Doc. 17, at ¶ 5 ("Any intervening parties, individuals, or entities claiming to have any maritime lien for the supply of bunkers to the M/V DEEP BLUE, or a right to or interest in the Cash Bond held as security by the Clerk of Court [], shall appear by intervention and assert any claims to, or interests in, the Security and shall state any objections to the disposition of the Security not later than **April 15, 2015**." (internal footnotes omitted))) and specifically recognized that "upon the appearance of any party in intervention, the dates set forth in this scheduling order may need to be amended." (*Id.* at 1, n.2.)

---

[1] Indeed, the parties indicated that discovery may be needed not only on the "relationship" issue previously identified (*see* Doc. 16, ¶ 4.C.) but, as well, "on any competing or intervening claims timely filed for the funds interplead as security to release said vessel." (Doc. 16, ¶ 4.A.)

3

Another party has appeared, ING Bank N.V. filing its verified complaint in intervention against the M/V DEEP BLUE on April 15, 2015 (Doc. 20), in compliance with the deadline set forth in the Rule 16(b) scheduling order (Doc. 17, ¶ 5). Therein, ING avers that O.W. Bunkers UK assigned to ING its interest in all amounts due and owing it by the M/V DEEP BLUE or its owner and, further, that Barcliff's claim should be dismissed with prejudice. (*See* Doc. 20, at 1-7 & Exhibit B.)

On May 1, 2015, Barcliff filed its motion for summary judgment (Doc. 35; *see also* Doc. 36.) A briefing schedule was entered on May 4, 2015 (Doc. 39). Thereafter, the defendant filed its answer to ING's verified complaint in intervention on May 6, 2015 (Doc. 40); ING filed its motion to amend scheduling order on May 8, 2015 (Doc. 41); Barcliff filed its answer to ING's verified complaint in intervention on May 15, 2015 (Doc. 42);[2] and ING filed its memorandum in opposition to plaintiff's motion for summary judgment on May 18, 2015, taking the position that plaintiff's motion should be denied without prejudice to renewal upon completion of discovery (*see* Doc. 43).[3]

Based upon ING's memorandum in opposition to Barcliff's summary judgment motion, the Court instructed plaintiff to inform it why the intervenor's motions were not well taken and why the motion for summary judgment should not be denied "without prejudice to its renewal . . . upon completion of discovery in this action." (Doc. 45.) Later still, that is, on May 21, 2015, the Court granted the defendant's motion to

---

[2] In its answer to the complaint in intervention, Barcliff takes numerous positions, including that ING's complaint fails to state a claim, ING does not have a maritime lien on the M/V DEEP BLUE, and ING's complaint should be dismissed with prejudice.

[3] Relying on Rule 56(d), ING contends that plaintiff's motion for summary judgment is premature because it has not been allowed a reasonable opportunity to conduct discovery and, therefore, "'lacks any reasonable means of challenging, testing or controverting the [summary judgment motion].'" (*Id.* at 3, quoting *Church v. Accretive Health, Inc.*, No. 14-0057, 2014 U.S. Dist. LEXIS 173199, at *50 (S.D. Ala. Dec. 16, 2014).)

continue the briefing schedule respecting Barcliff's motion for summary judgment. (*Compare* Doc. 48 *with* Doc. 46.)

Barcliff/Radcliff filed its response to the Court's May 19, 2015 order on May 28, 2015 (Doc. 49) and therein takes the position that ING has not shown that it meets the requirements of Rule 56(d)—for denial of the pending motion for summary judgment—because ING "has not articulated what particular facts it expects to discover." (*Id.* at 2.)

> ING Bank has not provided any explanation as to how any additional discovery would be relevant to the issue of the alleged maritime lien it asserts it has or the maritime lien of Radcliff. ING Bank's affidavit, which lamented that no depositions or other discovery have yet taken place and indicated an intention to depose Radcliff and third-parties, failed to show what specific facts or information further discovery might reveal, as required to support the motion. Rather, ING Bank's affidavit states in a conclusory fashion that additional discovery might further bolster and support its maritime lien claims and might refute Radcliff's maritime lien. ING Bank is asking to take discovery to learn unspecified fact "X" to prove that a maritime lien exists (for it) or that a maritime lien does not exist for Radcliff.
>
> Furthermore, Rule 56(d) provides a remedy "when *facts* are *unavailable* to the nonmovant." Radcliff, with the help of ING Bank, has provided sufficient facts to support Radcliff's motion for summary judgment, which facts are available to ING Bank: Radcliff has attached exhibits showing the order to supply fuel to the Vessel, the acknowledgement by the Chief Engineer of the Vessel of receiving the fuel (the Bunker Certificate) and an affidavit attesting to non-payment of the resulting invoice. Given those facts, ING Bank is required to show now why summary judgment should not be entered in Radcliff's favor as a matter of law. ING Bank itself has also presented facts in the form of its invoices and contract terms attached to its Complaint in Intervention which support Radcliff's argument that ING Bank does not have a valid maritime lien on the Vessel. The facts known to the parties require that ING respond to the summary judgment. ING Bank may not use a Rule 56(d) motion as an excuse to delay answering why its maritime lien fails as a matter of law.
>
> Finally, any testimony regarding the invoices, bunker certificates or contract terms will be merely cumulative to the evidence contained in the exhibits now before the court. Radcliff submits that no amount of discovery is going to change the basic facts cited in its motion, which facts are known to all the parties involved, as to who actually provided the bunkers (Radcliff) and who has not been paid (Radcliff). No amount of discovery is [] going to change those facts, nor the fact that ING Bank's

5

> sworn Verified Complaint in Intervention asserts that it holds a maritime lien on the Vessel by virtue of its contract terms only (as neither it nor OW Bunkers provided necessaries to the Vessel).

(*Id.* at 2-3 (citation omitted; emphasis supplied).)

## DISCUSSION

Rule 56(d) of the Federal Rules of Civil Procedure provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *Id.*

> The Eleventh Circuit has explained that "[t]he whole purpose of discovery in a case in which a motion for summary judgment is filed is to give the opposing party an opportunity to discover as many facts as are available and he considers essential to enable him to determine whether he can honestly file opposing affidavits." *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) (quoting *Parrish v. Bd. of Com'rs of Ala. State Bar*, 533 F.2d 942, 948 (5th Cir. 1976)). Accordingly, district courts in the Eleventh Circuit should grant requests under Rule 56(d) "when the party opposing the [summary judgment] motion has been unable to obtain responses to his discovery requests" and the discovery sought would be essential to opposing summary judgment and "relevant to the issues presented by the motion for summary judgment." *Snook*, 859 F.2d at 870 (citation omitted); *see Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006).

*Baron Services, Inc. v. Media Weather Innovations LLC*, 717 F.3d 907, 912 (11th Cir. 2013).

The paramount problem in this case, of course, is that ING Bank has had absolutely no opportunity to conduct discovery because it was a mere two weeks after its appearance that Barcliff filed its motion for summary judgment. Indeed, by the time ING joined this lawsuit, the time for making initial disclosures had passed (Doc. 17, ¶ 4 (deadline for making the initial disclosures required by Fed.R.Civ.P. 26(a)(1) set for March 9, 2015), and it did not have time to serve and receive responses to written discovery before the close of discovery (*compare* Doc. 17, ¶ 3 (discovery completion date

6

set for May 18, 2015) *with id.* at ¶ 9 (providing that responses to written discovery are due within 30 days of service)) or to make appropriate expert disclosures (*see id.* at ¶ 6 (expert reports due before—March 16, 2015—or one day after ING made its appearance—April 16, 2015)). In addition, ING Bank has succinctly set forth, through the affidavit of one of its attorneys, the discovery it needs to conduct in order to appropriately respond to plaintiff's motion for summary judgment, as follows:

> ING Bank requires discovery of, among other things, documents and communications, including agreements, confirmations, and negotiations, between and among the parties involved in the transaction as issue in this matter (i.e., O.W. Bunkers UK, O.W. [Bunkers] USA, Technip UK Limited [], the M/V DEEP BLUE, and Radcliff).
>
> Further, ING Bank will likely need to depose individuals at these entities about, among other things: their communications; their negotiations over the relevant fuel bunker supply agreements or other contracts; the sale, purchase order, nomination confirmations and invoices sent among the parties, the timing of such confirmations or invoices, and to whom such confirmations and invoices were sent; authority to engage other parties; knowledge of, and knowledge of identities of, other parties involved in the supply and delivery of bunkers; historical relationships and past dealings between and among the parties; and other circumstances surrounding the physical delivery of the bunkers to the M/V DEEP BLUE.
>
> This information is expected to create genuine issues of fact as to whether O.W. Bunkers UK or O.W. [Bunkers] U.S.A. has a maritime lien or contractual claim, whether it supplied bunkers within the meaning of the Federal Maritime Lien Act[,] 46 U.S.C. § 31301 [], and whether it supplied those bunkers on the order of someone with authority within the meaning of FMLA. This is also expected to create genuine issues of fact as to whether Radcliff is incorrect in its statements that ING Bank has not been assigned a valid maritime lien or contractual claim or that any such claim is lesser than the alleged claims of Radcliff.

(Doc. 43, Affidavit of J. Marshall Gardner, at ¶¶ 8-10.) And while Barcliff contends in opposition that ING has not articulated what particular facts it expects to discover in support of its Rule 56(d) argument (*see* Doc. 49, at 2-3), what is most telling about Barcliff's motion in opposition and its motion for summary judgment is that in order to grant summary judgment in favor of Barcliff, this Court necessarily would be required

to determine that "ING Bank N.V. does not possess an *in rem* maritime lien against the Vessel or its substituted Receivable for the delivery of fuel on November 1, 2014, as its assignee O.W. Bunkers UK Ltd failed to pay its physical supplier Radcliff for the fuel delivered to the DEEP BLUE[,]" (Doc. 35, at 1-2), which would, in turn, require that the Court accept Barcliff/Radcliff's submission that "the correct application of the requirement in 46 U.S.C. § 31342(a) of 'providing' necessaries is that the unpaid physical supplier is the only party who can assert that it 'provided' the necessaries to the vessel." (Doc. 36, at 6.) Ultimately, Barcliff's position may be shown to be absolutely correct; however, this Court finds that it is a better exercise of its discretion, *see Baron Services, Inc., supra,* 717 F.3d at 914 (abuse of discretion standard utilized in Rule 56(d) context), to allow ING to conduct some discovery before ruling on plaintiff's motion for summary judgment. It is the undersigned's perception that to deprive ING of the discovery it requests would be extremely risky because although "there is no 'blanket prohibition on the granting of summary judgment motions before discovery' is fully complete[,]" summary judgment "should not be granted until the nonmoving party has had an **adequate opportunity to conduct discovery**." *Madura v. BAC Home Loans Servicing, LP,* 593 Fed.Appx. 834, 849 (11th Cir. Nov. 10, 2014) (emphasis supplied), citing *Reflectone, Inc. v. Farrand Optical Co.,* 862 F.2d 841, 843 (11th Cir. 1989) (per curiam); *see also Jones v. City of Columbus,* 120 F.3d 248, 253 (11th Cir. 1997) ("The law in this circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion."), *cert. denied,* 523 U.S. 1118, 118 S.Ct. 1797, 140 L.Ed.2d 937 (1998). As previously indicated, given ING's late appearance on April 15, 2015 and the expiration of discovery on May 18, 2015, the intervenor has not had an adequate opportunity to conduct written discovery (particularly when it is considered that the parties

responding to its written discovery would have 30 days from service to file responses) or take depositions. When these facts are combined with the Court's specific recognition that it may need to amend the scheduling order "upon the appearance of any party in intervention[]" (Doc. 17, at 1 n.1), the only reasonable course of action is for the undersigned to defer considering plaintiff's motion for summary judgment until ING has had an adequate opportunity to conduct discovery. To this end, ING's motion to amend the Rule 16(b) scheduling order (Doc. 41) is **GRANTED** and the following supplemental scheduling order is entered:

    1.    FINAL PRETRIAL CONFERENCE. This non-jury action is set for a final pretrial conference before the undersigned on **November 17, 2015, at 10:00 a.m., in Mobile, Alabama.** This is a firm setting and the parties are expected to be ready for trial on this date. **A COPY OF JUDGE CASSADY'S STANDING ORDER GOVERNING HIS FINAL PRETRIAL CONFERENCES IS ATTACHED. NO ADDITIONAL NOTICES REGARDING THE FINAL PRETRIAL CONFERENCE WILL BE NECESSARY.**

    2.    TRIAL. This action will come on for trial before the undersigned during the month of **December 2015,** in Mobile, Alabama, the specific dates to be set at the Final Pretrial Conference. The parties have estimated that this action will require one (1) trial day.

    3.    DISCOVERY COMPLETION. All discovery is to be completed on or before **August 14, 2015.** Requests for extension will be viewed with great disfavor and will not be considered except upon a showing (1) that extraordinary circumstances require it and (2) that the parties have diligently pursued discovery.

For all actions, "completed" means that all interrogatories, requests for admissions, and requests for production have been served and responded to; physical

9

inspections and testing concluded; physical and mental examinations concluded; experts' reports exchanged; all depositions, including experts' depositions, taken; and motions to compel timely filed to give adequate time for the court to consider then and non-party subpoenas (for production of evidence or to permit inspection). *See also infra*, ¶ 10.

4. <u>INITIAL DISCLOSURES</u>. The initial disclosures required by Fed.R.Civ.P. 26(a)(1) have already been exchanged (*see* Doc. 41, at ¶ 7.a. (requesting initial disclosure date of June 5, 2015)), or should be exchanged not later than **June 12, 2015.**

6. <u>EXPERT TESTIMONY</u>. The expert reports as required by Rule 26(a)(2)(B) shall be produced by plaintiff and the intervenor on or before **June 19, 2015** and by defendant on or before **July 19, 2015.** In addition, any Rule 26(a)(2)(C) disclosures are to be made by plaintiff and the intervenor on or before **June 19, 2015** and by defendant on or before **July 19, 2015.** Rebuttal evidence, authorized by Rule 26(a)(2)(D), shall be disclosed on or before **July 19, 2015** by defendant and **August 14, 2015** by plaintiff and the intervenor. An expert's deposition, if taken, must be noticed and completed within **thirty (30) days** of the date on which the expert's report is disclosed.

<u>Please Note</u>: **All challenges to expert witnesses, including Daubert motions, must be filed in advance of the Final Pretrial Conference and not later than October 27, 2015.**

7. <u>SUPPLEMENTATION</u>. Supplementation of disclosures and responses as required by Rule 26(e) is to be accomplished "at appropriate intervals" and "seasonably," but not later than **September 14, 2015.**

8. <u>PRETRIAL DISCLOSURES</u>. The time for **disclosing** the information required by Rule 26(a)(3) shall be **October 27, 2015.**

12. <u>DISPOSITIVE MOTIONS</u>. Barcliff/Radcliff may supplement its motion for summary judgment, and any other party may file a motion for summary judgment, not later than **August 28, 2015**.[4] All responses in opposition must be filed not later than **September 11, 2015**, with all replies due not later than **September 18, 2015**. Neither the final pretrial conference nor the trial in this action will be delayed pending a ruling on such motions. In submitting exhibits, the parties are reminded of Local Rules 5.5(b) and (c), which provide that only relevant portions of deposition transcripts or other discovery materials shall be filed in support of or in opposition to a motion. Evidentiary submissions that do not comport with these requirements may be disregarded.

**DONE** and **ORDERED** this the 9th day of June, 2015.

    s/WILLIAM E. CASSADY
    **UNITED STATES MAGISTRATE JUDGE**

---

[4] In other words, a ruling on Barcliff's present motion for summary judgment (Doc. 35) is **HELD IN ABEYANCE** and will not be entered until after September 18, 2015.