Exhibit H 21

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARTIN ENERGY SERVICES, LLC** | **CIVIL ACTION** |
| VERSUS | NO. 14-2986<br>c/w 15-79 c/w 15-81 |
| M/V BOURBON PETREL, her engines, tackle, bunkers, Etc., *in rem*, and BOURBON PETREL SNC AND BOURBON OFFSHORE GREENMAR, S.A., *in personam* | SECTION "L" (4) |

## ORDER & REASONS

The Court has before it O.W. Bunker USA Inc.'s Motion to Enforce the Automatic Stay Against Martin Energy (Rec. Doc. 26), Martin Energy Services, LLC's Motion to Strike Answer (Rec. Doc. 27) and Motion to Strike Notice of Appearance and Filings (Rec. Doc. 28), and CGG Services S.A. and CGG Services US, Inc.'s Motion to Stay Proceedings (Rec. Doc. 29). Having read the parties' briefs and reviewed the applicable law, the Court now issues this Order & Reasons.

### I. BACKGROUND

This consolidated case began as three actions filed by Plaintiff Martin Energy Services, LLC ("Martin Energy") that were subsequently consolidated in this court on March 3, 2015. O.W. Bunker USA Inc. ("O.W. Bunker") purchased bunkers from Martin Energy and resold those bunkers to CGG Services S.A. and/or CGG Services US ("CGG"). (Rec. Doc. 26-1 at 3). Specifically, O.W. Bunker contracted with Martin Energy to transport bunkers for delivery to three vessels under a long term Time Charter to CGG: the M/V BOURBON PETREL, the M/V MISS LILLY, and the M/V OMS RESOLUTION. Martin Energy delivered the bunkers to the vessels and issued invoices to O.W. Bunker, seeking payment for the bunkers and deliveries. In

turn, O.W. Bunker issued invoices to CGG. The monetary difference between what O.W. Bunker invoiced CGG and what Martin Energy invoiced O.W. Bunker totals $16,839.80. (Rec. Doc. 32 at 1).[1] Conversely, Martin Energy is owed approximately $1,200,000 (*See* Rec. Doc. 26-5, Rec. Doc. 26-6, Rec. Doc. 26-7, Rec. Doc. 28-8 at 10)[2]. To date, neither CGG nor O.W. Bunker has paid the invoiced amounts.

On November 13, 2014, O.W. Bunker filed a voluntary petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code in the Connecticut Bankruptcy Court. (Rec. Doc. 26-8), *Voluntary Petition for Bankruptcy of O.W. Bunker USA Inc.* (Rec. Doc.1), Case No. 14-51722 (Bankr. D. Conn.). In that voluntary petition, O.W. Bunker identified Martin Energy on its "Consolidated List of Creditors Holding Twenty-One (21) Largest Unsecured Claims filed on the Petition Date in each of Debtors' Bankruptcy Cases." O.W. Bunker recorded that Martin Energy had a disputed trade debt claim amount for $1,178,101.44. (Rec. Doc. 26-8 at 10), *Voluntary Petition for Bankruptcy of O.W. Bunker USA Inc.* (Rec. Doc.1 at 9), Case No. 14-51722 (Bankr. D. Conn.).

On December 3, 2014, Martin Energy entered its appearance in the Connecticut Chapter 11 Bankruptcy Proceeding. (Rec. Doc. 26-9 at 2); *Voluntary Petition for Bankruptcy of O.W. Bunker USA Inc.* (Rec. Doc.122), Case No. 14-51722 (Bankr. D. Conn.). According to O.W. Bunker, and Martin Energy does not dispute this point, counsel for Martin Energy attended the Section 341 meeting of creditors on December 15, 2014 and questioned the Debtors with respect to Martin Energy's potential claims against O.W. Bunker. (Rec. Doc. 26-1 at 5). Furthermore, O.W. Bunker states that it filed its schedule of assets and liabilities on December 19, 2014 and

---

[1] Martin Energy noted this figure in its Opposition to O.W. Bunker's Motion to Enforce the Automatic Stay.

[2] O.W. Bunker may owe Martin Energy up to $1,533,313.20, as O.W. Bunker listed Martin Energy as having an unsecured claim against the bankruptcy estate in that amount on December 14, 2014. (Rec. Doc. 26-1 at 5).

2

identified Martin Energy as having an unsecured claim against O.W. Bunker's estate in the amount of $1,533,313.29. (Rec. Doc. 26-1 at 5). O.W. Bunker further relays that Martin Energy filed a proof of claim against O.W. Bunker in the Connecticut Bankruptcy Proceeding on March 13, 2015.

On December 30, 2014, Martin Energy brought the first of the three separate actions and sought arrest of the M/V BOURBON PETREL, one of the vessels to which Martin Energy had delivered the bunkers. On January 13, 2015, Martin Energy filed two more actions and sought arrest of the other two vessels, the M/V MISS LILLY and the M/V OMS RESOLUTION. In additions to the *in rem* proceedings, Martin Energy also brought *in personam* claims against the owners of the vessels, Bourbon Petrel SNC and Bourbon Offshore Greenmar S.A.

All three actions allege that Martin Energy has not been compensated for labor, materials, and/or services that it provided the vessels pursuant to its contract with O.W. Bunker. In response, CGG made a Restricted Appearance pursuant to Supplemental Rule E(8) and filed a Verified Statement of Interest in all three cases, alleging a right of possession of each vessel based on the long term Time Charters. Defendants, along with CGG, allege that third party, O.W. Bunker, is responsible for the payment of these invoices by virtue of their contracts with Martin Energy. (Rec. Doc.12). On March 5, 2015, O.W. Bunker filed a Notice of Restricted Appearance pursuant to Supplemental Rule E(8) (Rec. Doc. 18) and a Notice of Filing of Bankruptcy (Rec. Doc. 19).

## II. PRESENT MOTIONS

### A. Martin Energy's Motions to Strike Appearances and Filings (Rec. Docs. 27 & 28)

Martin Energy filed a Motion to Strike the "Restricted Appearance" of O.W. Bunker and all pleadings filed on its behalf, as well as a Motion to Strike the Answers filed by CGG. Martin

Energy contends that it is exercising its right to proceed against the vessels *in rem* to secure payments for the delivered bunkers, or "necessaries", pursuant to 46 U.S.C. § 31301 *et seq*. (Rec. Doc. 28-1 at 2). O.W. Bunker, Martin Energy maintains, does not own an interest in the vessels and thus cannot "satisfy the 'right of possession or an ownership interest' requirements of Supplemental Rule C(6)," which is required for a party to enter a restricted appearance pursuant to Supplemental Rule E. (Rec. Doc. 28-1 at 4). Moreover, Martin Energy contends that O.W. Bunker never fulfilled the procedural requirements of Supplemental Rule C(6), as O.W. Bunker never filed a Statement of Interest with the Court.

O.W. Bunker responds and argues that the Court should determine whether the automatic stay applies to the proceedings before requiring Martin Energy to establish an interest in these proceedings. (Rec. Doc. 31 at 2). If the Court disagrees and finds that O.W. Bunker must establish an ownership interest, O.W. Bunker maintains that it has standing because it maintains its own maritime liens against the vessels.

Martin Energy also moves to strike CGG's Answers on the basis that CGG is not a named defendant and, as a vessel time charterer, does not meet the standing requirements of Fed. R. Civ. Proc. Supplemental Rule C(6). (Rec. Doc. 27). Martin Energy contends that "[i]n an admiralty and maritime proceeding governed by Rule C, subparagraph (6) requires that a statement be filed only by a person claiming a right of possession or ownership," and CGG does not possess nor own the vessels as a time charterer. (Rec. Doc. 27 at 3).

CGG opposes the motion. CGG argues that Martin Energy's pleadings "triggered cognizable property interests of CGG that Rule C(6) is designed to protect" because Martin Energy sought arrest of the vessels' bunkers, which constitutes CGG's property. (Rec. Doc. 33 at 2-3). Further, CGG states that it paid for the Special Vessel Release Bonds that this Court

approved to preclude the seizure of the vessels and their bunkers, as Section 19 of the Time Charters required CGG to indemnify and defend the Vessel Owners in response to the *in rem* and *in personam* claims asserted by Martin Energy. (Rec. Doc. 33 at 3). CGG argues that the posting of these bonds constitute interests that are cognizable under Rule C(6). (Rec. Doc. 33 at 3-4). CGG contends that "what little case law there is…supports CGG's position that the filing of a bond by someone other than the vessel owner is entirely appropriate, and an appearance can be made on behalf of the vessel if that non-owner is responsible for satisfying any liens that would lead to arrest." (Rec. Doc. 33 at 4) (citing *Ciambro Corp. v. George H. Dean, Inc.*, 560 F. Supp. 2d 68, 69 (D. Me. 2008)).

### B. Motions to Stay (Rec. Docs. 26 & 29)

O.W. Bunker and CGG, along with SNC Bourbon CE Petrel, Rederiij Groen BV, Sea Support Ventures, LLC ("Vessel Owners"), filed motions to stay the present proceedings. O.W. Bunker argues that this Court should enforce the automatic stay imposed by 11 U.S.C. § 362(a) against Martin Energy in this case. By bringing the present claims, O.W. Bunker argues that Martin Energy violated the automatic stay because O.W. Bunker's right to collect the outstanding accounts receivable from each vessel constitutes property of the bankruptcy estate. (Rec. Doc. 26-1 at 11). O.W. Bunker further argues that it has its own maritime liens which constitute property of the bankruptcy estate, and Martin Energy's efforts to eliminate or alter those liens violate the automatic stay. (Rec. Doc. 26-1 at 12). Looking to Martin Energy's *in personam claims*, O.W. Bunker avers that O.W. Bunker, and not Martin Energy, directly contracted with the vessels referenced in the transactions. (Rec. Doc. 26-1 at 12).

CGG and the Vessel Owners also ask this Court to stay the present proceedings and incorporate O.W. Bunker's arguments. (Rec. Doc. 29). CGG states that if Martin Energy had

"complied with the automatic stay arising from the Chapter 11 cases, CGG would not be in the untenable position of defending competing demands in different jurisdictions for the same bunker payments." (Rec. Doc. 29-1 at 1). CGG argues that Martin Energy's Proof of Claim filed in the Chapter 11 proceedings states that the amount O.W. Bunker owes to Martin Energy constitutes an administrative priority claim against the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 503(b)(9). (Rec. Doc. 29-1 at 2) (citing Rec. Doc. 26-18). If the Bankruptcy Court agrees with this contention, CGG argues that there would be no sum to recover in these consolidated cases, further supporting a stay as to avoid piecemeal adjudication. (Rec. Doc. 29-1 at 2).

Martin Energy opposes the motions to stay. Martin Energy argues that the automatic stay does not apply to the instant case because Martin Energy's claims constitute *in rem* claims against the vessels, and neither the vessels nor the posted security are property of the O.W. Bunker bankruptcy estate. (Rec. Doc. 32 at 3). Martin Energy posits that "[a]ctions to foreclose on and adjudicate maritime liens on vessels that are not owned by the debtor but which may have an effect on the debtor have been held not to violate the automatic stay." (Rec. Doc. 32 at 4) (citing *In re Chugach Forest Products, Inc.*, 23 F.3d 241 (9th Cir. 1994)). Here, Martin Energy argues, O.W. Bunker is not the owner of the vessels but was merely the broker that arranged bunker delivery to the vessels, and C.G.G. is the time charterer. (Rec. Doc. 32 at 5). Martin Energy contends that it did not consent to the exclusive jurisdiction of the bankruptcy court when it filed a Proof of Claim in the Connecticut bankruptcy court, but rather, Martin Energy is asserting a different claim in this Court than in the bankruptcy proceeding. In this Court, Martin Energy argues, it is as asserting an *in rem* claim directly against the vessels to enforce a maritime lien, whereas it is asserting an unsecured priority claim and general unsecured claim against

O.W. Bunker in the bankruptcy proceeding. (Rec. Doc. 32 at 7 -8). Martin Energy analogizes the situation "to a lender with a promissory note from a company and a guaranty note from one of its officers. In a default situation, the lender is free to act against the borrower, the guarantor, or both, and is free to do so separately." (Rec. Doc. 32 at 8)). Martin Energy further contends that its actions do not preclude O.W. Bunker from asserting its own liens and notes that O.W. Bunker has not asserted a maritime lien in this action. (Rec. Doc. 32 at 8).

O.W. Bunker replies. O.W. Bunker argues that *In re Chugach Forest Products, Inc.* is inapplicable to these proceedings because O.W. Bunker has a lien on the vessels for the invoiced amount to CGG, and any efforts by Martin Energy to undermine those lien rights violate the automatic stay. (Rec. Doc. 41 at 3-4). O.W. Bunker disputes Martin Energy's assertions that the Connecticut Bankruptcy Court does not have jurisdiction and contends that "[t]he ranking and priority of maritime liens is a core bankruptcy matter." (Rec. Doc. 41 at 4) (citing *In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 96 (2d Cir. 2005) (Sotomayor, J.)).

In response to CGG's motion, Martin Energy argues that the automatic stay is not applicable to CGG because CGG is not affiliated to or related to O.W. Bunker. (Rec. Doc. 34 at3).

### III. LAW AND ANALYSIS

#### A. Motions to Strike

Martin Energy moves to strike O.W. Bunker's Restricted Appearance and CGG's Answer. Both parties filed a Restricted Appearance pursuant to Supplemental Rule of Civil Procedure E(8), which states:

> An appearance to defend against an admiralty and maritime claim with respect to which there has issued process in rem, or process of attachment and garnishment, *may be expressly restricted to the defense of such claim*, and in that event is not an appearance for the

7

> purposes of any other claim with respect to which such process is not available or has not been served.

Fed. R. Civ. P. SUPP. E(8) (emphasis added). The statutory language of the rule clearly indicates that the rule provides a mechanism whereby the owner or possessor of a vessel can defend against an *in rem* proceeding without subjecting himself to the court's personal jurisdiction. *See* Schoenbaum 2 Admiralty & Mar. Law § 21-5 (5th ed.) ("Subsection (8) of the Rule allows a defendant who appears to defend a claim *in rem* or attachment to restrict his appearance to that claim only; his defense does not constitute an appearance for the purposes of any other claim to which such process is not available or has not been served."). As Supplemental Rule E(8) is a means to defend against an *in rem* proceeding, O.W. Bunker cannot use that procedural device to enter the lawsuit because O.W. Bunker did not enter this suit to defend against the vessel arrests. O.W. Bunker rather constitutes another maritime lienor asserting a competing claim, and these facts do not comport with the clear statutory language and purpose of Supplemental Rule E(8).

The proper procedural vehicle for O.W. Bunker to enter the lawsuit, and assert its maritime lien rather than defend against a lien, was to file a motion to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure. *See Effjohn Int'l Cruse Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 560 (5th Cir. 2003) (noting that creditors would have had to file a motion to intervene under Rule 24 to assert their liens); *see also Indian River Recovery Co. v. The China*, 108 F.R.D. 383, 385-86 (D. Del. 1985) (explaining that Rule 24 allows parties to intervene who have an interest in the *in rem* proceeding and that the rationale of Rule 24 is in line with historical admiralty practice). This conclusion is further supported when read in the greater context of Rule E(8)'s association with Rule C(6). As noted by Martin Energy, Rule E(8) does not exist in a vacuum, and a defendant who enters a Restricted Appearance pursuant to Rule E(8)

8

must fulfill the procedural requirements of Rule C(6). In other words, Rule E(8) is merely a vehicle allowing a defendant to pursue a defense as outlined by Rule C(6), and Rule C(6) clearly distinguishes between the defense and assertion of a claim, with the latter procedurally confined to a Rule 24 motion to ntervene as a means to enter a lawsuit. The Advisory Committee Notes to Rule C state

> In an admiralty and maritime proceeding governed by paragraph (b), a statement is filed only by a person claiming a right of possession or ownership. Other claims are advanced by intervention under Civil Rule 24....

It is thus evident that Rule E(8) is not available as a procedural mechanism to O.W. Bunker to assert its maritime lien, but rather, O.W. Bunker should have filed a Rule 24 motion to intervene.

O.W. Bunker argues that this Court should rule on its Motion to Stay prior to adjudicating Martin Energy's Motion to Strike, or conversely that the Court should recognize that O.W. Bunker's maritime lien is sufficient for O.W. Bunker to satisfy the standing requirements. O.W. Bunker must properly be in this case to urge a motion before the Court, so there is no merit to the proposition that this Court can rule on O.W. Bunker's Motion to Stay without ascertaining whether O.W. Bunker is a party to the suit. In support of its argument that O.W. Bunker's maritime lien should afford O.W. Bunker standing, O.W. Bunker cites a number of Fifth Circuit cases concerning civil forfeiture and argues that "in the Fifth Circuit, 'a claimant must come forth with *some* evidence of his ownership interest to establish standing....'" (Rec. Doc. 31 at 2) (quoting *U.S. v. $38,570,950*, 950 F.2d 1108, 1112 (5th Cir. 1992)). This reliance is misguided. The cited cases all pertain to civil forfeiture defenses under Rule C(6). Prior to the 2002 Amendments to the Federal Rule of Civil Procedure, Rule C(6) applied to defenses of maritime liens and civil forfeiture actions. As the Advisory Committee Notes to the 2000

Amendments make clear, the requirements differed for those persons using C(6) for civil forfeiture proceedings and those using C(6) for maritime *in rem* defenses. The Notes state:

> **In a forfeiture proceeding** governed by paragraph (a), a statement must be filed by a person who asserts an interest in or a right against the property involved. **This category includes every right against the property, such as a lien, whether or not it establishes ownership or a right to possession.** In determining who has an interest in or a right against property, courts may continue to rely on precedents that have developed the meaning of "claims" or "claimants" for the purpose of civil forfeiture proceedings.
> **In an admiralty and maritime proceeding governed by paragraph (b), a statement is filed only by a person claiming a right of possession or ownership. Other claims against the property are advanced by intervention under Civil Rule 24, as it may be supplemented by local admiralty rules.**

Fed. R. Civ. P. SUPP AMC C. This distinction makes clear that the Fifth Circuit's holdings in the cases referenced by O.W. Bunker cannot be applied to admiralty proceedings pursuant to Rule C(6). In sum, O.W. Bunker is not properly before this Court because O.W. Bunker's pursuit of its maritime lien, and not a defense against a lien, renders O.W. Bunker ineligible to exploit Rule E(8) as a means to enter this lawsuit.

CGG, on the other hand, is properly before this Court pursuant to Rules E(8) and C(6), as CGG satisfied the procedural requirements of C(6) by properly filing a Statement of Interest and asserting a right of possession or ownership interest. CGG's Statement of Interest declares that CGG has possession over the vessels due its Time Charter and an ownership interest in that CGG procured and paid the Special Vessel Release Bonds. Moreover, CGG is required to indemnify the vessel owners pursuant to their Time Charters and owns the bunkers. Based on these factors, the Court is persuaded that CGG is properly before the Court pursuant to Rules C(6) and E(8) of the Supplemental Rules for Admiralty and Maritime Claims.

10

### B. Motions to Stay

Although the Court cannot entertain O.W. Bunker's Motion to Stay, CGG's Motion to Stay is properly before the Court. When a debtor files a bankruptcy petition, an automatic stay automatically arises pursuant to Section 362(a) of the Bankruptcy Act. "The automatic stay is at the heart of bankruptcy relief." Benedict on Admiralty § 6. "Without the stay…the bankruptcy goal of *pro rata* distribution to creditors would be frustrated and rehabilitation would be impossible." *Id.* The stay prohibits "any action to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). "In effect, the stay prevents any improvement of position by creditor activity whether it be by obtaining security, a priority position or other advantage." Benedict on Admiralty § 6.

Here, CGG argues that the proceeding violates the automatic stay because O.W. Bunker maintains maritime liens on the vessels, and those liens constitute property of the bankruptcy estate. Both Martin Energy and O.W. Bunker claim maritime liens under the Maritime Commercial Instruments and Liens Act, 46 U.S.C. § 31301, *et seq.* Specifically, § 31342 establishes maritime liens for persons who have provided "necessaries" to a vessel on either the order of the vessel owner or the order of an authorized agent. *See Container Applications Int'l, Inc. v. Lykes Bros. Steamship Co., (In Re Container Applications Int'l., Inc.),* 233 F.3d 1361, 1362, 1366 (11th Cir.2000) (explaining that a maritime lien claimant must have: (1) provided (2) necessaries (3) to a vessel, (4) by order of the owner or an authorized agent). The "lien arises automatically upon the furnishing of necessaries." *Riffe Petroleum Co. v. Cibro Sales Corp.,* 601 F.2d 1385, 1389 (10th Cir.1979). *See Equilease Corp. v. M/V Sampson,* 793 F.2d 598, 602 (5th

11

Cir. 1986) ("The lien arises when the debt arises...."). Section 31341(a) lists entities presumed to have authority to procure necessaries: (1) the owner; (2) the master; (3) a person entrusted with the management of the vessel at the port of supply; or (4) an officer or agent appointed by the buyer in possession of the vessel.

Based on the facts presented in the parties' briefs, it is not clear whether Martin Energy or O.W. Bunker has a maritime lien against the vessels because Fifth Circuit precedent indicates that Martin Energy is not inherently entitled to a lien as the actual deliverer of the bunkers, but the lien is contingent on the parties' relationships. In *Lake Charles Steverdores, Inc. v. PROFESSOR VLADIMIR POPOV MV, in rem*, the Fifth Circuit held that a rice supplier did not have a maritime lien against the vessel arising out of furnished necessaries. 199 F.3d 220, 229 (5th Cir. 1999). In that case, one party had time chartered the vessel and also entered into a contract with the intermediary to purchase rice. *Id.* at 222. The intermediary, in turn, entered into a contract for stevedoring services with the supplier who would deliver the rice to the vessel. *Id.* The intermediary went into receivership and the supplier arrested the vessel to procure payment for the stevedoring services. *Id.* at 223.

The Fifth Circuit analyzed whether the supplier had a "necessaries" maritime lien and centered its analysis on whether the intermediary had the authority to act on behalf of the vessel when it employed the supplier. Like this case, there was no contract between the vessel/vessel charterer and the supplier. Focusing on this relationship, the Fifth Circuit stated that two lines of cases dealt with such circumstances: the general contractor/subcontractor line of cases and the principal/agent or middle man line of cases. The Fifth Circuit noted that the cases indicated that the supplier does not have a maritime lien in the general contractor situation but does have a maritime lien in the middle man context. The determination of which situation applies to a case

is a fact-intensive question, as evidenced by the Fifth Circuit's analysis in *Lake Charles Steverdores, Inc.* Looking to the two lines of cases, the Fifth Circuit averred:

> We are persuaded by our review of these cases that it is not whether an intermediary can be expected to supply the necessaries itself that distinguishes instances in which the actual suppliers have liens, but it is rather the nature of the relationship between each pair of entities that are involved in the transaction at issue (e.g., agent vs. independent contractor).

*Id.*

Based on the briefs, the Court cannot carry out this fact-intensive analysis and is therefore unable to definitively ascertain whether O.W. Bunker or Martin Energy has a maritime lien against the vessels. A number of questions remain regarding the bunker transactions and the relationships between these parties, and such facts will determine which party holds liens against the vessels. If only Martin Energy maintains liens against the vessels, a stay would not be appropriate. Conversely, if O.W. Bunker is the sole lien holder, the Court will stay these proceedings.

The Court therefore invites the parties to provide the Court with additional briefing on the issue of which party holds the maritime liens against the vessels. If O.W. Bunker wishes to participate in these proceedings, it shall file a motion to intervene pursuant to Rule 24.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Martin Energy's Motion to Strike Answer to Complaint (Rec. Doc. 27) is **DENIED**;

**IT IS FURTHER ORDERED** that Martin Energy's Motion (Rec. Doc. 28) to Strike Notice of Appearance and to Strike O.W. Bunker's Motion to Enforce Automatic Stay (Rec. Doc. 26) is **GRANTED**;

**IT IS FURTHER ORDERED** that CGG's Motion to Stay is **DENIED WITHOUT PREJUDICE**, and the Court invites the parties to further brief the issue of which party holds a maritime lien;

**IT IS FURTHER ORDERED** that the trial, currently scheduled for June 8, 2015, **IS CONTINUED WITHOUT DATE**, and the pretrial conference, scheduled for May 20, 2015 at 1:30 p.m., is converted into a status conference to be held in the Chambers of the Honorable Eldon E. Fallon. Out-of-town counsel may participate by phone.

New Orleans, Louisiana this 13th day of May, 2015.

_____
UNITED STATES DISTRICT JUDGE