UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

U.S. OIL TRADING, LLC,

                Plaintiff,

      v.

M/V VIENNA EXPRESS, her tackle,
boilers, apparel, furniture, engines,
appurtenances, etc., in rem, and M/V
SOFIA EXPRESS, her tackle, boilers,
apparel, furniture, engines, appurtenances,
etc. in rem,

                Defendants,

HAPAG-LLOYD
AKTIENGESELLSCHAFT, as claimant
to the in rem defendant M/V VIENNA
EXPRESS,

     Counter-Claimant and Third-Party
Plaintiff,

     v.

U.S. OIL TRADING, LLC,

CASE NO. 14-5982 RJB

ORDER ON O.W. BUNKER

GERMANY GMBH'S MOTION TO

TRANSFER VENUE

1

Counter-Defendant and

2

3   O.W. BUNKER GERMANY GMBH,
    O.W. BUNKER & TRADING A/S, ING
    BANK N.V., CREDIT AGRICOLE
4   CORPORATE AND INVESTMENT
    BANK, a division or arm of CREDIT
5   AGRICOLE S.A.,

6

    Third-Party Defendants.
7

8        This matter comes before the Court on Motion of Third-Party Defendant O.W. Bunker

9   Germany GMBH ("O.W. Bunker Germany") to Transfer Venue pursuant to 28 U.S.C. § 1404.

10  Dkt. 43.  The Court has considered the pleadings filed in support of and in opposition to the

11  motion and the file herein.

12       Plaintiff U.S. Oil Trading ("USOT") filed this case against the M/V VIENNA EXPRESS

13  and the M/V SOFIA EXPRESS ("vessels"), *in rem,* to enforce maritime liens under the Maritime

14  Commercial Instruments and Liens Act, 46 U.S.C. § 31301, *et seq.* ("Lien Act").  Dkt. 1.  A few

15  hours before this case was filed, the vessels' owner and third-party plaintiff Hapag-Lloyd

16  Aktiengesellschaft ("Hapag") filed an interpleader action in the U.S. District Court for the

17  Southern District of New York ("S.D.N.Y.") seeking to determine the proper recipient(s) of

18  payment for the bunker fuel delivered to the vessels.  *Hapag-Lloyd AG v. U.S. Oil Trading LLC,*

19  S.D.N.Y. Civil Action No. 1:14-cv-9949.  That interpleader action is one of 23 other interpleader

20  cases which were consolidated and are pending before the Honorable Valerie Caproni.  *Hapag-*

21  *Lloyd AG v. U.S. Oil Trading LLC,* S.D.N.Y. Civil Action No. 1:14-cv-9949.  Each case is

22  related to the global collapse and bankruptcy of O.W. Bunker & Trading A/S, its subsidiaries and

23  affiliates.  *Hapag-Lloyd AG v. U.S. Oil Trading LLC,* S.D.N.Y. Civil Action No. 1:14-cv-9949,

24

1   Dkt. 80, at 9.  Like this case, each of the other 23 interpleader cases involve fuel bunker

2   transactions made through an O.W. Bunker entity.  *Id.*  The moving party here, O.W. Bunker

3   Germany, one of the O.W. Bunker entities, moves for transfer of this case because of the:  (1)

4   first filed interpleader action, (2) December 19, 2015 Order of Judge Caproni that restrains and

5   enjoins USOT from prosecuting any action against the M/V SOFIA EXPRESS, and (3)

6   overlapping parties and issues in the 23 other interpleader actions relating to similar fuel bunker

7   deliveries and the bankruptcy and collapse of O.W. Bunker & Trading A/S, its subsidiaries and

8   affiliates.  Dkt. 43.

9        For the reasons stated below, the motion to transfer the case to the S.D.N.Y. (Dkt. 43)

10  should be granted.

11               **I.      BACKGROUND FACTS AND PROCEDURAL HISTORY**

12                        **The Vessels Receive Bunker Fuel**

13       According to the Complaint, which was filed on December 17, 2014, around October 15,

14  2014, Hapag entered into an agreement with "broker O.W. Bunker & Trading A/S" to arrange

15  for the delivery of bunker fuel to the M/V VIENNA EXPRESS at the Port of Tacoma.  Dkt. 1, at

16  2.

17       In Hapag's Verified Answer, Counterclaim, and Third Party Complaint seeking Interpleader

18  and/or Declaratory Relief ("Answer"), Hapag alleges that it contracted with O.W. Bunker

19  **Germany** for the provision of bunker fuel for its ships from January 1, 2014 to December 31,

20  2014.  Dkt. 23, at 8 (*emphasis added*).  O.W. Bunker Germany, organized and existing under

21  German law, states that it is a separate legal entity from O.W. Bunker & Trading A/S, which is

22  asserted to be organized and existing under the Danish law.  As is relevant here, Hapag's Answer

23  states that its October 15, 2014 contract for the provision of fuel to the M/V VIENNA EXPRESS

24

1    at the Port of Tacoma was with O.W. Bunker Germany.  Dkts. 23, at 8 and 23-2, at 2-4.

2    Plaintiff USOT is listed as the physical supplier.  Dkt. 23-2, at 1.

3       Plaintiff USOT's Complaint alleges that on October 15, 2015, USOT (as seller) contracted

4    with O.W. Bunker & Trading A/S (as buyer) to sell and deliver bunker fuel to the M/V VIENNA

5    EXPRESS.  Dkt. 1, at 2-3.  There is also reference in the record to involvement of O.W. Bunker

6    USA Inc. (Dkt. 61-6, at 2), an O.W. entity in bankruptcy here in the U.S., but that entity's role is

7    unclear.

8       In any event, Plaintiff USOT delivered the bunker fuel to the M/V VIENNA EXPRESS on

9    October 18, 2014.  Dkt. 1, at 3.  USOT alleges that on or about October 18, 2014, it issued its

10    Invoice No. BWTD 83451 to O.W. Bunker & Trading A/S in the amount of $1,414,594.53 for

11    the delivery of bunkers to the vessel.  Dkt. 1, at 3.  USOT asserts that it was not paid by O.W.

12    Bunker & Trading A/S.  *Id*.

13       USOT alleges that on October 28, 2014, Hapag and "broker O.W. Bunker & Trading A/S"

14    entered an agreement to arrange for the delivery of bunker fuel to the M/V SOFIA EXPRESS at

15    the Port of Tacoma.  Dkt. 1, at 4. (Hapag's answer does not address this allegation because the

16    M/V SOFIA EXPRESS had not been arrested or served with process. Dkt. 23, at 2.)

17       According to Plaintiff, USOT (as seller) and O.W. Bunker & Trading A/S (as buyer) entered

18    into an agreement that same day for the delivery of fuel to the M/V SOFIA EXPRESS.  Dkt. 1, at

19    4.  The next day, on October 29, 2014, USOT delivered the fuel bunkers to the vessel.  Dkt. 1, at

20    5.  On October 29, 2014, USOT issued its Invoice No. BWTD 83463 to O.W. Bunker & Trading

21    A/S in the amount of $1,315,507.80 for the delivery of bunkers to the vessel.  Dkt. 1, at 5.

22    USOT asserts that it was not paid by O.W. Bunker & Trading A/S.  *Id*.

23

24

1    USOT acknowledges that it did not enter into contracts with Hapag for the fuel bunker

2    deliveries for either the M/V VIENNA EXPRESS or the M/V SOFIA EXPRESS.  Dkt. 52-2, at

3    4.

4    On November 2, 2014, O.W. Bunker & Trading A/S, and certain of its Danish subsidiaries

5    filed for bankruptcy in Denmark.  *Hapag-Lloyd AG v. U.S. Oil Trading LLC,* S.D.N.Y. Civil

6    Action No. 1:14-cv-9949, Dkt. 80, at 9.  Several other of its' subsidiaries and affiliates also filed

7    for bankruptcy across the globe.  *Id.*  Included in that number are the United States entities: O.W.

8    Bunker USA, Inc., O.W. Bunker Holding North America, and O.W. Bunker North America, who

9    filed for Chapter 11 relief in the United States Bankruptcy Court for the District of Connecticut.

10    *In re O.W. Bunker Holding North America,* case No. 14-51720(AHWS)(Bankr. D. Conn. filed

11    November 13, 2014).

12    Hapag indicates in its Answer that O.W. Bunker Germany "invoiced" it for the provision of

13    fuel to the M/V VIENNA EXPRESS.  Dkt. 23, at 8.  Hapag states that it was also "invoiced" by

14    Plaintiff here, USOT, and another of the counter-defendants/third party defendants.  *Id.*  Hapag

15    asserts that in the usual course of business, it would be "invoiced" by and pay O.W. Bunker

16    Germany.  *Id.*, at 8.

17    Hapag states that there were threats to arrest the M/V VIENNA EXPRESS.  Dkt. 23.

18    On November 28, 2014, a letter of undertaking ("LOU") in favor of USOT was issued by

19    Hapag's agent (its protection and indemnity association) in exchange for USOT's promise to

20    refrain from arresting the vessel to enforce USOT's maritime lien.  Dkt. 52-1, at 8-11.  The LOU

21    purports to stand as security in favor of USOT for USOT's maritime lien claim ("claim") against

22    the vessel, *in rem*, with the same force and effect as if the vessel had been arrested at 12:00 p.m.

23    on November 29, 2014.  Dkt. 52-1, at 9.  It also provides that Hapag will: "file or cause to be

24

1   filed an appearance and claim of owner on behalf of vessel in an action asserting the claim" filed

2   or to be filed by USOT in the "U.S. District Court for the Western District of Washington or

3   such other court of competent jurisdiction in the U.S. as may be agreed," which "court shall have

4   exclusive *in rem* jurisdiction over the claim." Dkt. 52-1, at 8-9.

5       According to USOT, USOT counsel was in the process of negotiating with Hapag's counsel

6   for an LOU for the other vessel that is the subject of this suit, the M/V SOFIA EXPRESS, but

7   that LOU was not issued. Dkt. 39.

8                                   **Litigation Begins**

9       On December 17, 2014, Hapag filed an interpleader action in the S.D.N.Y. seeking to

10  determine the proper recipient(s) of payment for the bunker fuel delivered to both the vessels.

11  *Hapag-Lloyd AG v. U.S. Oil Trading LLC,* S.D.N.Y. Civil Action No. 1:14-cv-9949.  Hapag

12  asserts that it is subject to multiple claims for payment.  *Id.*  It seeks to be discharged from

13  liability and wants to eliminate the threat of having its vessels seized.  *Id.*  It further seeks to have

14  the LOU issued regarding the M/V VIENNA EXPRESS be cancelled, returned, and replaced by

15  a bond.  *Id.*  The case was assigned to Judge Caproni and is one of 23 other interpleaders (three

16  others of which were also brought by Hapag) that have been consolidated before her.  *Id.*  O.W.

17  Bunker Germany is a defendant in at least four, O.W. Bunker & Trading A/S is a defendant in at

18  least one, and third party defendant here, ING Bank, N.V., is a defendant in at least 20 of the

19  joined interpleader suits.  *Id.*

20      Later on December 17, 2014, USOT filed this case in the Western District of Washington

21  seeking relief against the vessels *in rem*.  Dkt. 1.

22      On December 18, 2014 at 11:00 a.m., an omnibus hearing in the S.D.N.Y. interpleader case

23  was held and the court, in part, considered oral argument on Hapag's motion for a temporary

24

restraining order ("TRO").  Dkt. 44-7, at 2.  (The court also considered other matters related to the other interpleader cases).  *Id*.  The proposed TRO would enjoin any action against the M/V SOFIA EXPRESS.  *Id*.  Lawyers that represent USOT in this case were present at the omnibus hearing for another client, but when asked if USOT objected to the TRO, they indicated that they were not authorized to represent USOT in regard to the TRO and that they heard about the motion on the courthouse steps.  Dkt. 44-7, at 4.  That lawyer requested an adjournment.  *Id*. The court adjourned the hearing at 1:30 p.m., told the lawyers that now represent USOT that they had one hour (until 2:30 p.m.) to talk with their client USOT about representing them regarding the TRO.  Dkt. 44-7, at 4.  The lawyers did not return.  Dkt. 44-7, at 15.  When court resumed at 2:30 p.m., the court indicated that with some changes, the TRO would issue.  Dkt. 44-7, at 31-37.

On December 18, 2014, at 12:49 p.m. PST, (which would have been 3:39 p.m. in New York) this Court granted USOT's *ex parte* application for an Order for Issuance of Warrant of Maritime Arrest pursuant to Supplemental Admirality Rule C(3) regarding the M/V SOFIA EXPRESS. Dkt. 10.

This Court was not then informed of the proceedings in the S.D.N.Y.

On December 19, 2014 at 8:19 a.m., the written temporary restraining order ("TRO") was issued in the interpleader action in the S.D.N.Y.  *Hapag-Lloyd AG v. U.S. Oil Trading LLC,* S.D.N.Y. Civil Action No. 1:14-cv-9949, Dkt. 5.  The court found that USOT had notice of the TRO.  *Id.*  It restrained or enjoined USOT, O.W. Bunker Germany, O.W. Bunker & Trading A/S, ING Bank, N.V., and Credit Agricole S.A. from "instituting or prosecuting any proceeding or action anywhere, affecting the property and res involved in this action of interpleader, including but not limited to the arrest, attachment or other restraint" of the M/V SOFIA EXPRESS "pursuant to Supplemental Admiralty Rule C or Rule B or other laws to enforce claimants'

1  alleged maritime lien claims arising from the bunker deliveries until the further order of the

2  Court." *Id.*, at 2. Hapag agreed to, and did pay for, a bond for the full amount due, plus 6%

3  interest, plus another 6% if the case is not resolved within one year. *Id.*  The TRO provided that:

4          The [bond] will stand as security for the competing claims for payment due, if
           any, for the supply of the bunkers to the Vessels, and the bond shall serve as the

5          substitute res for the Vessels in rem and/or for the payment obligation of [Hapag]
           relating to the supply of the bunkers, and any persons or entities including the

6          defendants shall submit their claims for entitlement to payment in this proceeding.

7  *Id.,* at 2.

8          Meanwhile, here in Washington State, on December 19, 2014, at 10:07 a.m. PST, USOT

9  filed a notice that the S.D.N.Y. had entered a TRO which they alleged "post dates this Court's

10 order to arrest the M/V SOFIA EXPRESS."  Dkt. 13.  USOT asked the U.S. Marshals to refrain

11 from arresting the vessel. *Id.*

12         On December 22, 2014, USOT "filed an order to show cause" in the S.D.N.Y. as to why the

13 December 19, 2014 TRO should not be modified or vacated.  *Hapag-Lloyd AG v. U.S. Oil*

14 *Trading LLC,* S.D.N.Y. Civil Action No. 1:14-cv-9949, Dkt. 10.  USOT filed a brief and argued,

15 in part, that it had valid maritime liens against the two vessels at issue here, that the TRO

16 improperly deprived USOT of its statutory right to enforce its valid maritime liens against the

17 vessels, and that the S. D. N.Y. was the improper venue for the case.  *Hapag-Lloyd AG v. U.S.*

18 *Oil Trading LLC,* S.D.N.Y. Civil Action No. 1:14-cv-9949, Dkt. 13.  On December 30, 2014, the

19 S.D.N.Y. court denied USOT's request to modify or vacate the TRO.  *Hapag-Lloyd AG v. U.S.*

20 *Oil Trading LLC,* S.D.N.Y. Civil Action No. 1:14-cv-9949, Dkt. 17.  On December 31, 2014, the

21 S.D.N.Y. court invited the parties to submit briefing presenting argument relating to the court's

22 jurisdiction over vessels located outside the S.D.N.Y.  *Hapag-Lloyd AG v. U.S. Oil Trading LLC,*

23 S.D.N.Y. Civil Action No. 1:14-cv-9949, Dkt. 21.  Over the next few months, parties, including

24

ORDER ON O.W. BUNKER GERMANY GMBH'S
MOTION TO TRANSFER VENUE- 8

1    USOT, submitted the requested briefing.  *Hapag-Lloyd AG v. U.S. Oil Trading LLC,* S.D.N.Y.

2    Civil Action No. 1:14-cv-9949.  On July 1, 2015, the S.D.N.Y. court issued an order holding that

3    it has subject matter jurisdiction over the interpleader cases.  *Hapag-Lloyd AG v. U.S. Oil*

4    *Trading LLC,* S.D.N.Y. Civil Action No. 1:14-cv-9949, Dkt. 80.

5          On January 9, 2015, USOT filed a Notice of Interlocutory Appeal to the Second Circuit

6    Court of Appeals, challenging the S.D.N.Y. court's December 19, 2014 TRO.  *Hapag-Lloyd AG*

7    *v. U.S. Oil Trading LLC,* S.D.N.Y. Civil Action No. 1:14-cv-9949, Dkt. 28.  As of today, the

8    Second Circuit has not issued a decision.

9          In this Western District of Washington case, on June 4, 2015, USOT filed a Motion for

10   Summary Judgment Against M/V VIENNA EXPRESS *in rem*.  Dkt. 37.  It argues that the Lien

11   Act applies to its claim against the vessel *in rem* as a matter of law and that the lien arises as a

12   matter of law.  *Id.*  USOT argues that there are no genuine issues of material fact, it provided

13   necessaries to the vessel on the order of the vessel's owner or a person authorized by the owner

14   and thus holds a valid maritime lien against the vessel.  *Id.*  Defendant Hapag, third-party

15   defendant ING Bank N.V., and third-party defendant O.W. Bunker Germany all oppose the

16   motion for summary judgment and argue that the motion should be delayed until after discovery

17   is complete.  Dkts. 54, 58, 60.  In particular, they argue that USOT cannot show as a matter of

18   law that it furnished necessaries to the vessel "on the order of the owner or a person authorized

19   by the owner" as required by the Lien Act 46 U.S.C. § 31342.  *Id.*  They assert that the motion

20   for summary judgment should be delayed until parties have an opportunity to conduct discovery

21   specifically regarding the nature of the relationships among all the parties in the bunker supply

22   chain. *Id.*  These motions are noted for consideration in August 2015.

23

24

1    After the USOT's motion for summary judgment was filed, O.W. Bunker Germany filed its

2    Answer, Interpleader Claims, and Counterclaim in Response to Third-Party Complaint for

3    Interpleader and Declaratory Judgment ("O.W. Bunker Germany's Answer and Complaint") in

4    this Western District of Washington case.  Dkt. 53.  O.W. Bunker Germany seeks to recover

5    against Hapag and the M/V VIENNA EXPRESS.  *Id.*

6        ING BANK has not yet filed its Answer in this case, but indicates in other pleadings that it

7    may also seek relief against Hapag and the vessels.  Dkt. 54.

8                                        **Instant Motion**

9        O.W. Bunker Germany now moves for transfer of this case to the S.D.N.Y.  Dkt. 43.  It

10   argues that the case should be transferred under both the relevant statute, Ninth Circuit case law

11   and in the interest of justice.  *Id.*  USOT has responded and opposes the motion. Dkt. 52. O.W.

12   Bunker Germany has filed a reply (Dkt. 70) and the motion is ripe for decision.

13                                  **II.    <u>DISCUSSION</u>**

14       Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of

15   justice, a district court may transfer any civil action to any other district or division where it

16   might have been brought or to any district or division to which all parties have consented."

17   "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for

18   transfer according to an individualized, case-by-case consideration of convenience and fairness."

19   *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22

20   (1988)(*internal citation omitted*).

21       For the convenience of the parties and witness, this case should be transferred to the

22   S.D.N.Y.  The parties are and will be litigating the same and/or similar questions in the first filed

23   action in that forum.  It is in the interest of justice to have this case transferred.  Hapag is in the

24

1   unfortunate position of having several entities demand payment for a single transaction per

2   vessel – the provision of fuel bunkers.  Many of those entities are threatening to arrest the

3   vessels, forcing Hapag to endure further economic hardship.  Without addressing the merits of

4   the summary judgment motion (which has not been fully briefed), at this stage, it is unclear

5   which, if any, of the present parties are entitled to a maritime lien.  Hapag has posted a surety

6   bond, including an additional 6%, with an agreement to add another 6% if the case does not

7   resolve within one year.

8       USOT argues transfer is inappropriate because it could not have brought these *in rem* claims

9   against the vessels in the S.D.N.Y.  Dkt. 52.  It argues this Court was the only court with *in rem*

10  jurisdiction over the vessels, and thus was the only court in which USOT could have commenced

11  this *in rem* action to enforce its statutory liens against the vessels under the Lien Act.

12       On July 1, 2015, the S.D.N.Y. court issued an order holding that it has subject matter

13  jurisdiction over the interpleader cases.  *Hapag-Lloyd AG v. U.S. Oil Trading LLC,* S.D.N.Y.

14  Civil Action No. 1:14-cv-9949, Dkt. 80.  In relevant part, it addresses these arguments by USOT

15  and others, referred to as "Objecting Claimants," and provides the following:

16           The Objecting Claimants argue that the Court lacks subject matter jurisdiction
         to adjudicate their statutory *in rem* claims against the Vessels under 28 U.S.C. §

17       1335 and that the Court lacks authority under 28 U.S.C. § 2361 to enjoin them
         from enforcing their *in rem* claims against the Vessels. The fulcrum of their

18       argument is that their *in rem* claims against the Vessels are "separate and distinct"
         from any *in personam* claims against the Vessel Interests and therefore are not

19       amenable to resolution as part of an interpleader, which requires adverse claims
         arising out of a single obligation.  Because (they argue) only the Vessel Interests'

20       *in personam* obligations are the proper subject of the Interpleader Actions, the
         Court lacks authority to enjoin the commencement of *in rem* proceedings in other

21       jurisdictions. In support of this position, the Objecting Claimants argue that the
         funds or bonds deposited in the Court's registry satisfy only the Vessel Interests'

22       *in personam* obligations but not the Vessels' *in rem* obligations, which can only
         be satisfied by the Vessels themselves "or the amount due under the [V]essels'

23       separate and distinct obligations *in rem* to pay defendants for the bunker fuel
         delivered to the [V]essels." In addition, the Objecting Claimants argue that the

24

Court could not adjudicate the *in rem* claims against the Vessels in any event because, in many cases, the Vessels were never arrested or present in this jurisdiction and the Objecting Claimants did not consent to substitute the amounts on deposit for the res that are the subjects of their maritime liens. Finally, the Objecting Claimants argue that because their *in rem* claims against the Vessels are not the "obligations" involved in the Interpleader Actions and the Vessels are not parties to the Interpleader Actions, an injunction preventing them from enforcing their *in rem* claims by arresting Vessels in other jurisdictions exceeds the Court's authority under 28 U.S.C. § 2361.

The Objecting Claimants' argument that their *in rem* claims against the Vessels are "separate and distinct" from the *in personam* claims against the Vessel Interests is without merit. Both the Objecting Claimants' *in rem* claims against the Vessels as well as any *in personam* claims that they or others may ultimately choose to assert against the Vessel Owners spring from a single event: the Objecting Claimants' provision of fuel to the Vessels pursuant to a contract, or series of contracts, between or among the Objecting Claimants, O.W. Entities, Vessel Interests and, in some cases, other third-party brokers. When the O.W. Entities commenced bankruptcy proceedings and the Objecting Claimants found themselves in a sea of unsecured creditors, the Objecting Claimants looked for a better solution. While they are unsecured creditors of the O.W. Entities, they are effectively secured creditors of the non-bankrupt Vessel and, therefore, in a position to exert tremendous leverage against the Vessel Interests, whose only mistake was to purchase fuel through an O.W. Entity in the weeks preceeding [sic] the company's unexpected and rapid demise. It did not take a brilliant legal strategist to figure out that, in lieu of standing in line in the Chapter 11 proceeding, the Objecting Claimants could jump that line by proceeding directly against the Vessel, *in rem*, pursuant to 46 U.S.C. § 31342 to collect the amounts due. But because there is only one underlying debt, any interpleaded *in personam* claims against the Vessel Interests are merely alternative procedural devices to obtain the same relief as would be obtained by arresting the Vessel. See Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule C")(1)(b). "Under the admiralty law of the United States, *in personam* and *in rem* actions may arise from the same claim, and may be brought separately or in the same suit." *Belcher Co. of Alabama, Inc. v. M/V Maratha Mariner*, 724 F.2d 1161, 1164 (5th Cir. 1984) (*citing* Rule C(1)(b)). *Cf. Burns Bros. v. the Central R.R. of New Jersey*, 202 F.2d 910, 912-13 (2d Cir. 1953) (Hand, J.) (even if a plaintiff has a right to bring an admiralty action *in rem* or a suit *in personam* as "alternative remedies" against different defendants, there is only one "cause of action" when there is a single "interest invaded" (*internal quotations omitted*)).

Indeed, the Complaints filed in these actions note the existence of both competing *in personam* and *in rem* claims arising out of the fuel transactions at issue; the restraining orders likewise recognize that interpleader relief is necessary to protect the Vessel Interests from "multiple litigation against [the Vessel Interests] for the same [*in personam*] claim and against the Vessel *in rem* for payment of the same fuel bunker delivery." *See, e.g., Order, SHV Gas*, (S.D.N.Y.

1   Dec. 11, 2014), Dkt. 12. And significantly, the Objecting Claimants and other
Fuel Suppliers are not the only entities asserting that the unpaid fuel bunker
2   invoices give rise to maritime lien claims against the Vessels *in rem*. The U.S.
Debtors have also asserted maritime lien claims against the Vessels, yet they
3   recognize that because those claims arise out of a single obligation for the
purchase of fuel, they are all amenable to adjudication under the federal
4   interpleader statutes.

5         The Objecting Claimants contend that the "obligations" of the Vessels are
distinct from the "obligations" of the Vessel Interests. That argument fails for the
6   same reasons. "The *in rem* liability of a ship is a fiction; the reality is that the
owner, not the vessel, pays the judgment." *Insurance Co. of N. America v. S/S*
7   *American Argosy*, 732 F.2d 299, 302 (2d Cir. 1984). The source of the obligations
owed by the Vessel Interests and the Vessels, whether the debt is ultimately owed
8   to the Fuel Suppliers, O.W. Entities, ING, barging service providers or some
combination thereof, is the Vessel Interest's underlying purchase of fuel. Because
9   the *in personam* claims against the Vessel Interests and the *in rem* claims against
the Vessels arise out of the same debt, they are "inextricably interrelated," and
10  therefore subject to interpleader. *See Royal School Laboratories, Inc. v. Town of*
*Watertown*, 358 F.2d 813 (2d Cir. 1966) (Friendly, J.) (interpleader jurisdiction
11  proper when statutory materialmen lien claim and breach of contract claim arose
out of a single contract because the claims were "inextricably interrelated;"
12  allowing the suits to proceed separately created the risk of "two recoveries against
[the plaintiff] for the same enrichment"). . .

13         The *in rem* nature of the claims against the Vessels does not affect the
Court's subject matter jurisdiction under Section 1335. "It is well-settled that
14  subject matter jurisdiction and *in rem* jurisdiction are distinct." *Kristensons-*
*Petroleum, Inc. v. Sealock Tanker Co., Ltd.*, 304 F. Supp. 2d 584, 589 (S.D.N.Y.
15  2004) (*citation omitted*). "Accordingly, any purported absence of *in rem*
jurisdiction would not vitiate subject matter jurisdiction" if it otherwise existed. . .

16         In the context of the Interpleader Actions, the Interpleader Actions are not
actions to "enforce" maritime liens against the Vessels, although it is certainly
17  within the Court's admiralty jurisdiction to determine, in the context of the
Interpleader Actions, whether such liens are valid. *In rem* jurisdiction over the
18  Vessels is irrelevant in actions to declare the validity and priority of competing
maritime liens brought by the vessel owner or charterer. As a result, neither arrest
19  of the Vessels within the Court's jurisdiction nor the Fuel Suppliers' consent are
required to exercise subject matter jurisdiction over the *in rem* claims.

20  *Hapag-Lloyd AG v. U.S. Oil Trading LLC,* S.D.N.Y. Civil Action No. 1:14-cv-9949, Dkt. 80

21  (*citations to the record omitted*).

22         Accordingly, based on these holdings in the S.D.N.Y., USOT is able to raise its claims in

23  the S.D.N.Y. interpleader and so could have sought the exact same relief in S. D. N.Y. as it seeks

24

here.  The inquiry into whether a case should be transferred does not stop here, however.  In determining whether transfer under § 1404(a) is appropriate, multiple factors are weighed.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  In the Ninth Circuit, a court may consider:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis. We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

*Id.*, at 498-499.

On balance, in this extraordinarily unusual case, those factors weigh in favor of transfer.

    1.  <u>Location Where the Relevant Agreements Were Negotiated and Executed</u>

The factor weighs in favor of transfer or is neutral.  The bunker transactions at issue originated in Germany when Hapag contracted with O.W. Bunker Germany for the fuel.  Dkt. 23 and 53.  As is demonstrated by the disputes articulated in the summary judgment motion and oppositions thereto, the relationships between the various parties in the supply chain may well become relevant, as will their contracts which were negotiated and executed around the world.

    2.  <u>State that is Most Familiar with the Governing Law</u>

This factor is neutral.  The parties appear, at this stage, to agree that United States maritime law applies.  This Court and the S.D.N.Y. court are equally well suited to make determinations under United States maritime law.

    3.  <u>Plaintiff's Choice of Forum</u>

1    This factor weighs in favor of transfer.  Hapag's interpleader action was filed first and

2    then hours later, Plaintiff filed this case.  Under the first-to-file rule, when a similar case has

3    already been filed in another district, transfer is appropriate, and "should not be disregarded

4    lightly." *Alltrade, Inc. v. Uniweld Prods., Inc.,* 946 F.2d 622, 623 (9th Cir. 1991). The S.D.N.Y.

5    court has held that it has jurisdiction to decide whether the maritime liens asserted by the various

6    parties are valid. *Hapag-Lloyd AG v. U.S. Oil Trading LLC,* S.D.N.Y. Civil Action No. 1:14-cv-

7    9949, Dkt. 80.  This case should be transferred to be handled with Hapag's interpleader in

8    S.D.N.Y.

9            4.   Respective Parties' Contacts with the Forum

10    This factor is neutral.  Only plaintiff and the vessels had contacts with this forum and the

11    other parties are all foreign entities.  A majority of the facts relating to Washington are not

12    contested.  The contested facts appear to revolve around the various relationships of the foreign

13    entities, and it appears that a majority of the entities involved did not have any contact with

14    Washington.

15            5.   Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum

16    This factor is neutral.  While the fuel bunkers were provided in Washington, the facts

17    related to the actual provision are basically uncontested.  Plaintiff USOT is not the only plaintiff

18    here.  The third party plaintiffs' (Hapag, O.W. Bunker Germany, and potentially ING Bank)

19    claims revolve around contracts negotiated and executed in other forums.  This factor, is at best

20    neutral.

21            6.   Differences in the Costs of Litigation in the Two Forums

22    This factor weighs in favor of transfer.  All these parties are already litigating the same

23    issues regarding the provision of bunker fuel in S.D.N.Y.  Even if this Court does not transfer

24

this case, USOT will still have to litigate there. Forcing all parties to litigate in both forums only adds to the expense. This factor favors transfer to the S.D.N.Y.

7. Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses

This factor is neutral. Although USOT raises concerns about the availability of the compulsory process for uncooperative witnesses, no party has identified any non-party witnesses much less any who might be unwilling to testify in either jurisdiction.

8. Ease of Access to Sources of Proof

This factor is neutral. The evidence that is located in Washington appears to be limited and relatively undisputed. It appears that a majority of the evidence will come from other countries, and so neither forum is favored.

9. Forum Selection Clause

While USOT is quick to point to the forum selection clause in the LOU regarding the M/V VIENNA EXPRESS, that LOU does not appear to bind any of the other interested parties. Further, the record indicates that there may be forum selection clauses in other contracts relevant here; the one between Hapag and O.W. Bunker Germany which appears to designate the S.D.N.Y. as the proper forum, for example. Moreover, it appears the USOT had a great deal of bargaining power when it acquired the forum selection clause in the LOU. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)(court can consider the parties relative bargaining power in considering motions to transfer). USOT, O.W. Bunker Germany, and others were demanding that Hapag pay these invoices. USOT was threatening to arrest the vessels. Hapag was in the position of having to pay the debt several times over or have the vessels arrested. In this case, despite the forum selection clause in the LOU regarding the M/V VIENNA EXPRESS, the case should be transferred.

ORDER ON O.W. BUNKER GERMANY GMBH'S
MOTION TO TRANSFER VENUE- 16

1       10. <u>Other Considerations</u>

2       In addition to the above factors, this Court notes that there are other unusual

3 circumstances here that favor transfer.  One of those circumstances is the pendency of related

4 litigation in the S.D.N.Y. *See Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834 (9th

5 Cir. 1986).  These cases all appear to be related.  The most efficient way to handle them is for

6 them to be in the same court.  The issues raised here are the same or similar to the other

7 interpleader cases, and all of the parties in this case are represented by New York counsel.

8 Issues decided in New York can affect the lien and arrest of the vessels.  It seems likely that if

9 this case is not transferred, a stay in this jurisdiction would be necessary to avoid duplicate

10 litigation of the *in personam* issues and the possibility of conflicting rulings.  While the Court is

11 sympathetic to USOT's plight, in the interest of justice to all parties concerned, this case should

12 be transferred to the S.D.N.Y.

13                               **III.**     **<u>ORDER</u>**

14       Therefore, it is hereby **ORDERED** that:

15       •  Motion of Third-Party Defendant O.W. Bunker Germany GMBH ("O.W. Bunker

16          Germany") to Transfer Venue pursuant to 28 U.S.C. § 1404 (Dkt. 43) **IS**

17          **GRANTED**; and

18       •  This case **IS TRANSFERRED** to the U.S. District Court for the Southern District

19          of New York.

20 / /

21 /

22

23

24

1        The Clerk is directed to send uncertified copies of this Order to all counsel of record and

2   to any party appearing pro se at said party's last known address.

3        Dated this 7th  day of August, 2015.

4

5                                              _____

6                                              ROBERT J. BRYAN
                                               United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON O.W. BUNKER GERMANY GMBH'S
MOTION TO TRANSFER VENUE- 18