# Exhibit M



## MARINE FUEL OIL TERMS & CONDITIONS OF PURCHASE

### 1. DEFINITIONS

THROUGHOUT THIS CONTRACT, THE FOLLOWING DEFINITIONS SHALL APPLY:

| | | |
|---|---|---|
| • BUYERS : | HAPAG-LLOYD AG BALLINDAMM 25 20095 HAMBURG GERMANY | HAPAG-LLOYD KREUZFAHRTEN GmbH BALLINDAMM 25 20095 HAMBURG GERMANY |
| • SELLERS : | THE CONTRACTING COMPANY FROM WHOM THE BUYERS PURCHASE THE MARINE FUELS. | |
| • SUPPLIERS : | THE COMPANY FROM WHOM THE SELLERS PROCURE THE SUPPLY OF MARINE FUELS. | |
| • MARINE FUEL OIL : | ISO 8217 : 2005 - INTERNATIONAL STANDARD PETROLEUM PRODUCTS - FUELS (CLASS F) SPECIFICATIONS OF MARINE FUELS AND ANY SUBSEQUENT AMENDMENTS THEREOF. | |

### 2. APPLICATION

THESE TERMS INCLUDING ANY REVISIONS MADE AT THE DATE OF NOMINATION IN WRITING SHALL APPLY TO ANY PURCHASE CONTRACT BETWEEN BUYERS AND SELLERS.

### 3. APPLICATION OF THE SINGAPORE BUNKERING PROCEDURE (SBP)

WHERE DELIVERY OF MARINE FUEL IS CARRIED OUT BY BARGES/TANKERS IN SINGAPORE, OPERATION SHALL FOLLOW THE PROCEDURES PRESCRIBED BY THE SINGAPORE BUNKER PROCEDURE LATEST EDITION, ISSUED BY SINGAPORE NATIONAL SHIPPING ASSOCIATION.

### 4. DOCUMENTATION

BEFORE COMMENCEMENT OF DELIVERY THE SELLERS SHALL PRESENT FOR ACKNOWLEDGEMENT BY THE MASTER OF THE VESSEL OR HIS REPRESENTATIVES, A BUNKER REQUISITION OR SIMILAR DOCUMENT, DULY SIGNED BY THE SELLERS OR THEIR REPRESENTATIVES, WHICH SHALL CONTAIN THE QUANTITIES TO BE DELIVERED AND ALL INFORMATION REQUIRED IN ACCORDANCE WITH IMO/ISO RECOMMENDATIONS AND SPECIFICATIONS, INCLUDING IN PARTICULAR, ACTUAL VALUES FOR :

• VISCOSITY
• DENSITY
• WATER CONTENT
• SULPHUR CONTENT
• FLASHPOINT
• DELIVERY TEMPERATURE
• POUR POINT

IN ADDITION, AND IF AVAILABLE, SIMILAR INFORMATION SHALL BE PROVIDED FOR ALUMINIUM/SILICON, VANADIUM AND ASH CONTENT.

ONCE THE DELIVERY IS COMPLETED AND QUANTITIES MEASURED, A RECEIPT SHALL BE SIGNED AND STAMPED BY THE MASTER OF THE VESSEL, AND RETURNED TO THE SELLERS OR HIS REPRESENTATIVES, AS ACKNOWLEDGEMENT OF THE DELIVERY AND A DUPLICATE COPY SHALL BE RETAINED BY THE MASTER OF THE VESSEL. THIS RECEIPT SHALL CONTAIN THE FOLLOWING MINIMUM INFORMATION WHICH IS WARRANTED BY THE SELLERS:

• DELIVERED QUANTITY IN VOLUME UNITS AT ACTUAL TEMPERATURE
• ACTUAL DELIVERY TEMPERATURE
• DELIVERED QUANTITY IN VOLUME AT 15 DEGR. C.
• DENSITY IN KG/CUM AT 15 DEGR. C.
• DELIVERED QUANTITY IN WEIGHT UNITS.
• FLASHPOINT
• SULPHUR CONTENT IN % M/M

### 5. QUANTITY

THE QUANTITY OF MARINE FUEL OIL DELIVERED SHALL BE DETERMINED BY DIPPING OF TANKS OR METER READING AND CARGO TEMPERATURE READING OF THE BARGES/TANKERS TANKS EFFECTING DELIVERY.
IN CASE DELIVERY WILL TAKE PLACE FROM SHORESIDE, THE QUANTITY THEN SHALL BE DETERMINED BY METER READING.
THE SELLERS FIGURES, HOWEVER SHALL NOT BE REGARDED AS CONCLUSIVE, AND THE BUYERS SHALL HAVE THE RIGHT TO PROVE THAT THE FIGURES SHOWN IN THE BUNKER DELIVERY RECEIPT ARE INCORRECT.
SELLERS SHALL INVITE BUYERS REPRESENTATIVE TO WITNESS THE DELIVERY PROCEDURE.
THE FINDINGS OBTAINED AND NECESSARY ADJUSTMENTS IN VOLUME SHALL BE CALCULATED IN ACCORDANCE WITH THE ASTM-IP PETROLEUM MEASUREMENT TABLES.
MASTER OR HIS REPRESENTATIVE SHALL SIGN THE BUNKER DELIVERY RECEIPT FOR ACTUAL VOLUME AND ACTUAL DELIVERY TEMPERATURE ONLY, BUT NOT FOR THE DENSITY SHOWN IN THE BUNKER DELIVERY RECEIPT.
MASS IN VACUUM OR WEIGHT IN AIR SHALL BE SUBJECT TO VERIFICATION OF DENSITY OR WEIGHT FACTOR RESPECTIVELY BY ANALYSIS OF VESSEL'S RETAINED SAMPLE.
IF DISCREPANCIES ARISE BETWEEN SUPPLIERS AND BUYERS AS TO QUANTITIES OF MARINE FUEL OIL SUPPLIED, SUCH DISCREPANCIES SHALL HAVE TO BE DISCUSSED BETWEEN BUYERS AND SELLERS WITH A VIEW TO FIND A FAIR AN REASONABLE SOLUTION.

### 6. QUALITY/GRADE

THE BUYERS SHALL HAVE THE SOLE RESPONSIBILITY FOR THE NOMINATION OF THE GRADES OF MARINE FUEL OIL SUITABLE TO THE VESSEL, AND SHALL STATE THE GRADES REQUIRED IN THE NOMINATION ORDER.
THE SELLERS WARRANT THAT THE MARINE FUEL OIL SHALL BE OF A HOMOGENEOUS AND STABLE NATURE AND SHALL COMPLY WITH THE ISO GRADE NOMINATED BY THE BUYERS. SELLERS WARRANT, AND BUYERS RELY ON SELLERS' EXPERTISE IN PROVIDING SUCH A WARRANTY, THAT THE FUEL,

page 1 of 3

HPL-USOT 00039



SUPPLIED WILL NOT ONLY MEET THE RELEVANT ISO CRITERIA FOR THE GRADE OF FUEL SUPPLIED BUT WILL ALSO BE FIT AND/OR SUITABLE FOR THE PURPOSE OF PARTICULAR ENGINE INTENDED.
THE MARINE FUEL OIL SHALL IN ALL OTHER RESPECTS COMPLY WITH ISO STANDARDS 8217:2005 AND ANY SUBSEQUENT AMENDMENTS THEREOF.

7. DELIVERY

THE MARINE FUEL OIL SHALL BE DELIVERED TO THE VESSEL BY WHARF OR BY LIGHTER IN THE OPTION OF THE BUYERS OR BUYERS REPRESENTATIVES IN CASE BOTH ALTERNATIVES EXIST.

IF DELIVERY BY BARGE IS REQUESTED SELLERS WILL ARRANGE FOR SUFFICIENT BARGE AND PUMPING CAPACITY FOR TIMELY AND SPEEDY DELIVERY.

THE LIGHTERAGE CHARGE TO BE FOR BUYERS ACCOUNT, UNLESS THE PRICES ARE QUOTED FROM DELIVERED TO BUYERS VESSEL.

DELIVERY SHALL BE MADE AT DAY- AND NIGHT-TIME, SUNDAYS AND HOLIDAYS IF NECESSARY AND AS LONG AS ALLOWED BY APPLICABLE LOCAL LAWS OR REGULATIONS.

SHOULD THE FUEL SUPPLIED TO THE VESSEL FROM TWO DIFFERENT SOURCES OR BARGES HAVE DIFFERENT SPECIFICATION CHARACTERISTICS IT WILL BE ASSUMED THAT THE MARINE FUEL OIL IS COMPATIBLE UNLESS A STATEMENT TO THE CONTRARY IS MADE ON THE BUNKER REQUISITION FORM DULY SIGNED BY SELLERS AND BUYERS.

THE SELLERS SHALL BE IN POSSESSION OF ALL PERMITS REQUIRED TO COMPLY WITH ALL RELEVANT REGULATIONS PERTAINING TO DELIVERY OF MARINE FUELS AT THE PORT OR PLACE OF DELIVERY AND SHALL SUBJECT TO LOCAL LAWS PROHIBITING, BE RESPONSIBLE TO MAKE ALL CONNECTIONS AND DISCONNECTIONS BETWEEN THE DELIVERY HOSE(S) AND THE VESSEL'S INTAKE PIPE AND TO ENSURE THAT THE HOSE(S) ARE PROPERLY SECURED TO THE VESSEL'S MANIFOLD PRIOR TO THE COMMENCEMENT OF DELIVERY.

8. BOOMING

BOOMING TO BE ARRANGED BY SELLERS/SUPPLIERS ACCORDING TO ALL REQUIREMENTS OF LOCAL LAW LATEST EDITION.

9. SURVEY

BUYERS SHALL INFORM SELLERS IN ADVANCE WHETHER DELIVERY WILL BE ATTENDED BY AN INDEPENDENT SURVEY COMPANY.

10. SAMPLING

THE SELLERS SHALL ARRANGE AT LEAST FOR FOUR(4) IDENTICAL, REPRESENTATIVE SAMPLES OF EACH GRADE OF THE MARINE FUEL TO BE DRAWN THROUGHOUT THE ENTIRE BUNKERING OPERATION IN THE PRESENCE OF BOTH THE SUPPLIERS AND THE BUYERS OR THEIR RESPECTIVE REPRESENTATIVES.

THE SAMPLES SHALL BE DRAWN AT A POINT TO BE MUTUALLY AGREED BETWEEN SELLERS/SUPPLIERS AND THE BUYERS OR THEIR RESPECTIVE AGENTS, CLOSEST TO THE VESSEL'S BUNKER MANIFOLD.

THE SAMPLES SHALL BE DRAWN USING A MUTUALLY ACCEPTED SAMPLING DEVICE WHICH SHALL BE CONSTRUCTED, SECURED AND SEALED IN SUCH A WAY SO AS TO PREVENT THE SAMPLING DEVICE AND THE SAMPLES BEING TAMPERED WITH THROUGHOUT THE TRANSFER PERIOD.

THE AFOREMENTIONED SAMPLES SHALL BE SECURELY SEALED AND PROVIDED WITH LABELS SHOWING THE VESSEL'S NAME, IDENTITY OF DELIVERY FACILITY, PRODUCT NAME, DELIVERY DATE AND PLACE AND SUPPLIERS SEAL NUMBER.

HOWEVER, SAMPLE BOTTLES MUST BE FITTED WITH TWO SEAL LUGS TO ENABLE BUYERS REPRESENTATIVES TO COUNTERSEAL THE SAMPLES. IN CASE SUPPLIERS CAN NOT PROVIDE SUCH SAMPLE BOTTLES, BUYERS SHALL HAND OVER SAID BOTTLES TO THE SUPPLIER FREE OF CHARGE UNTIL FURTHER NOTICE.

TWO (2) SAMPLES SHALL BE RETAINED BY THE SELLERS FOR NINETY (90) DAYS AFTER DELIVERY OF THE MARINE FUELS TO THE VESSEL, OR, ON BEING REQUESTED IN WRITING BY THE BUYERS, FOR AS LONG AS THE BUYERS REQUIRES, AND THE OTHER TWO (2) SAMPLES SHALL BE RETAINED BY THE VESSEL, OR BY THE VESSEL'S REPRESENTATIVES IN MASTERS OPTION.

IT MUST BE NOTED THAT SAMPLES DRAWN EX INSTALLATION OR BEYOND BUYERS CONTROL, ARE NOT LEGALLY BINDING IN CASE OF A DISPUTE.
THIS INCLUDES ALSO BUNKERSTEMS NOT ATTENDED BY AN INDEPENDENT SURVEYOR. SUCCESSFUL HAND OVER OF SUCH INSTALLATION SAMPLES OR SPECIAL ACCEPTANCE BY THE VESSEL'S REPRESENTATIVES BY SIGNING SUCH RECEIPTS / SAMPLES ARE DECLARED AS NON - REPRESENTATIONAL, BY ALL MEANS.

11. PRICE

THE PRICE OF MARINE FUEL DELIVERED SHALL BE AS AGREED AND STATED IN BUYERS ORDER.
DELIVERY CHARGES , FEES AND ALL OTHER COSTS AND EXPENSES INCLUDING THOSE CHARGES IMPOSED BY GOVERNMENT AUTHORITIES ARE FOR BUYERS ACCOUNT AS LONG AS THEY HAVE BEEN SHOWED IN SELLERS WRITTEN ORDER CONFIRMATION SENT TO THE BUYERS WITHIN 24 HOURS AFTER THE NOMINATION DATE.
ANY DEMURRAGE CHARGES DUE TO BUYERS FAILURE SHALL BE ABSORBED BY THE BUYERS AS WELL.

12. PAYMENT

UNLESS EXPLICITLY AGREED UPON IN WRITING BETWEEN SELLERS AND BUYERS PAYMENT IN US DOLLARS FOR THE MARINE FUEL OIL DELIVERED WILL BE AVAILABLE TO THE SELLER'S ACCOUNT WITHIN THIRTY (30) DAYS AFTER THE COMPLETION OF DELIVERY OR FIFTEEN (15) RUNNING DAYS AFTER THE RECEIPT OF THE SELLERS INVOICE, WHICHEVER IS THE LATER.

ANY DELAY IN PAYMENT SHALL ENTITLE THE SELLERS TO INTEREST AT THE RATE OF 12% PER ANNUM.
SELLERS SHALL INFORM BUYERS OF ANY OUTSTANDING PAYMENT WITHIN 3 WORKING DAYS AFTER DUE DATE OF INVOICE.

THE INVOICE HAS TO INCLUDE THE NAME OF THE RECEIVING VESSEL, THE BUNKERING PORT, THE DATE OF DELIVERY, THE REFERENCE OF THE BUYERS, APART FROM DESCRIPTION OF THE QUANTITY AND QUALITY SUPPLIED.

HPL-USOT 00040



### 13. CLAIMS

ANY DISPUTE AS TO THE QUANTITY DELIVERED MUST BE NOTED AT THE TIME OF DELIVERY IN THE BUNKER DELIVERY RECEIPT OR IN THE LETTER OF PROTEST. ANY CLAIM AS TO SHORT DELIVERY SHALL BE PRESENTED BY THE BUYERS IN WRITING WITHIN 15 DAYS FROM THE DATE OF DELIVERY, FAILING WHICH ANY SUCH CLAIM SHALL BE DEEMED TO BE WAIVED AND ABSOLUTELY BARRED.

ANY CLAIM AS TO THE QUALITY OR DESCRIPTION OF THE MARINE FUEL OIL MUST BE NOTIFIED IN WRITING PROMPTLY AFTER THE CIRCUMSTANCES GIVING RISE TO SUCH CLAIM HAVE BEEN DISCOVERED. IF THE BUYERS DO NOT NOTIFY THE SELLERS OF SUCH CLAIM WITHIN 30 DAYS OF THE DATE OF DELIVERY, THEN THOSE CIRCUMSTANCES SHALL BE PRESUMED NOT TO HAVE BEEN CAUSED BY ANY DEFICIENCY IN THE QUALITY OR DESCRIPTION OF THE MARINE FUEL OIL SUPPLIED AND ANY SUCH CLAIM SHALL BE DEEMED TO BE WAIVED AND ABSOLUTELY BARRED.

IN SUCH EVENT THE PARTIES HERETO SHALL HAVE THE QUALITY OF THE MARINE FUEL OIL ANALYSED BY A MUTUALLY AGREED, QUALIFIED AND INDEPENDENT LABORATORY. THE SELLERS AND THE BUYERS SHALL PROVIDE THE LABORATORY WITH ONE OF THE SAMPLES RETAINED. IF ISO GRADES HAVE BEEN SPECIFIED THE ANALYSIS SHALL BE ESTABLISHED BY TESTS IN ACCORDANCE WITH ISO 8217: 2005 AND ISO 4259 OR ANY SUBSEQUENT AMENDMENTS THEREOF, UNLESS OTHERWISE AGREED. THE EXPENSES OF THE ANALYSES SHALL BE BORNE EQUALLY BY THE SELLERS AND THE BUYERS.

IN THE EVENT OF ANY DELAY RESULTING FROM :

- THE BUYERS FAILURE TO GIVE PROPER NOTICES AND/OR THE BUYERS VESSEL FAILING TO RECEIVE MARINE FUELS AT THE PUMPING RATE

- THE SELLERS FAILURE TO COMMENCE DELIVERY OF THE MARINE FUELS PROMPTLY IN ACCORDANCE WITH THE BUYERS REQUIRED DELIVERY TIME AND/OR THE SELLERS FAILURE TO DELIVER THE MARINE FUELS IN ACCORDANCE WITH THE MINIMUM HOURLY PUMPING RATE , THEN THE PARTY SUFFERING SUCH A DELAY SHALL BE ENTITLED TO COMPENSATION FROM THE OTHER PARTY FOR THAT DELAY.

### 14. RISK/TITLE

RISK IN THE MARINE FUELS SHALL PASS TO THE BUYERS ONCE THE MARINE FUELS HAVE PASSED THE FLANGE CONNECTING THE VESSEL'S BUNKER MANIFOLD WITH THE DELIVERY FACILITIES PROVIDED BY THE SELLERS. TITLE TO THE MARINE FUELS SHALL PASS TO THE BUYERS UPON PAYMENT FOR THE VALUE OF THE MARINE FUELS DELIVERED. UNTIL SUCH PAYMENT HAS BEEN MADE, THE SELLERS SHALL HAVE THE RIGHT OF LIEN OVER THE MARINE FUELS DELIVERED.

### 15. CANCELLATION

IF THE VESSEL FAILS TO ARRIVE OR RECEIVE MARINE FUEL OIL WITHIN THREE (3) DAYS FROM THE DATE NOMINATED ESTIMATED TIME OF ARRIVAL, EITHER PARTY HAS THE OPTION TO CANCEL THE DELIVERY OF MARINE FUEL OIL WITHOUT INCURRING ANY LIABILITY WHATSOEVER.

### 16. FORCE MAJEURE

NEITHER PARTY SHALL BE RESPONSIBLE FOR ANY LOSS, DAMAGE, DELAY OR FAILURE IN PERFORMANCE UNDER THESE TERMS RESULTING FROM THE ACT OF GOD, OR THE PORT DELIVERY BEING AFFECTED BY WAR, CIVIL COMMOTION, RIOT, QUARANTINE, STRIKES, STOPPAGES, LOCK-OUTS, ARRESTS, DETAINMENTS OF KINGS, PRINCES, RULERS AND PEOPLE OR ANY OTHER EVENT WHATSOEVER ARISING AFTER AGREEING THESE TERMS WHICH CANNOT BE AVOIDED OR GUARDED AGAINST BY THE EXERCISE OF DUE DILIGENCE, OR THE CONSEQUENCES OF WHICH, AS MAY AFFECT THE PERFORMANCE OF THESE TERMS CANNOT BE AVOIDED OR GUARDED AGAINST BY THE EXERCISE OF DUE DILIGENCE.

### 17. SAFETY AND THE ENVIRONMENT

IN THE EVENT OF ANY SPILLAGE, WHICH SHALL MEAN ANY LEAKAGE, ESCAPE, SPILLAGE OR OVERFLOW OF THE MARINE FUELS, CAUSING OR LIKELY TO CAUSE POLLUTION OCCURRING AT ANY STAGE OF THE BUNKERING OPERATION, THE BUYERS AND THE SELLERS SHALL, JOINTLY, AND REGARDLESS AS TO WHETHER THE BUYERS OR THE SELLERS ARE RESPONSIBLE, IMMEDIATELY TAKE SUCH ACTIONS AS ARE NECESSARY TO EFFECT CLEAN UP AND WHICH SHALL ALWAYS BE CONDUCTED IN ACCORDANCE WITH SUCH LOCAL LAWS AND REGULATIONS WHICH MAY COMPULSORILY APPLY.

WHERE IT IS A COMPULSORY REQUIREMENT OF THE LAW OF THE PORT OR PLACE OF DELIVERY OF THE MARINE FUELS THAT THE SELLERS SHALL HAVE IN PLACE THEIR OWN OIL SPILL CONTINGENCY PLANS, THE SELLERS SHALL ENSURE THAT VALID OIL SPILL CONTINGENCY PLANS APPROVED BY THE RELEVANT AUTHORITIES ARE IN EFFECT TO THE EXTENT THAT IS SO REQUIRED.

THE SELLERS HEREBY GUARANTEE PAYMENT OF AND/OR AGREE TO INDEMNIFY AND HOLD THE BUYERS HARMLESS FOR ANY CLAIMS, LOSSES, DAMAGES, EXPENSES, PENALTIES OR OTHER LIABILITIES INCURRED BY THE BUYERS UNDER THE UNITED STATES OIL POLLUTION ACT OF 1990, OR OTHER POLLUTION LEGISLATION OF ANY STATE OF THE UNITED STATES OF AMERICA OR ANY OTHER COUNTRY OR JURISDICTION, AS A RESULT OF ANY SPILLAGE OCCURRING WHILST THE MARINE FUELS ARE BEING TRANSPORTED DIRECTLY TO OR FROM THE BUYERS VESSEL'S MANIFOLD SAVE TO THE EXTENT THAT SUCH SPILLAGE IS CAUSED BY ANY FAULT ON THE PART OF THE BUYERS. THE BUYERS SHALL, SIMILARLY INDEMNIFY THE SELLERS WHERE ANY OF SUCH SPILLAGE OCCURS ONCE RISK IN THE MARINE FUELS HAS PASSED TO THE BUYERS SAVE TO THE EXTENT THAT SUCH A SPILLAGE IS CAUSED BY ANY FAULT ON THE PART OF THE SELLERS.

THE SELLERS SHALL USE THEIR BEST ENDEAVOURS TO ENSURE THAT THE BARGE COMPANY IS INSURED FOR OIL SPILL DAMAGES UP TO A MINIMUM AMOUNT PER INCIDENT REQUIRED BY STATUTORY RULES OR REGULATIONS. IF SUCH COVERAGE OR INSURANCE IS NOT OBTAINED BY THE BARGE COMPANY IT SHALL BE THE SOLE RESPONSIBILITY OF THE SELLERS TO ESTABLISH SUCH COVERAGE FOR THEIR ACCOUNT. PROOF AND CONDITIONS OF SUCH COVERAGE, WHETHER ESTABLISHED BY THE BARGE COMPANY OR BY THE SELLERS SHALL BE MADE AVAILABLE TO THE BUYERS AT THEIR REQUEST, AS SOON AS PRACTICALLY POSSIBLE.

### 18. LAW AND ARBITRATION

THIS CONTRACT SHALL BE COVERED BY AND CONSTRUED IN ACCORDANCE WITH ENGLISH LAW AND ANY DISPUTE ARISING OUT OF THIS CONTRACT SHALL BE REFERRED TO ARBITRATION IN LONDON IN ACCORDANCE WITH THE ARBITRATION ACTS 1950 AND 1979 OR ANY STATUTORY MODIFICATION OR RE-ENACTMENT THEREOF FOR THE TIME BEING IN FORCE. UNLESS THE PARTIES AGREE UPON A SOLE ARBITRATOR, ONE ARBITRATOR SHALL BE APPOINTED BY EACH PARTY AND THE ARBITRATORS SO APPOINTED SHALL APPOINT A THIRD ARBITRATOR, THE DECISION OF THE THREE-MAN TRIBUNAL THUS CONSTITUTED OR ANY TWO OF THEM, SHALL BE FINAL. ON THE RECEIPT BY ONE PARTY OF THE NOMINATION IN WRITING OF THE OTHER PARTY'S ARBITRATOR, THAT PARTY SHALL APPOINT THEIR ARBITRATOR WITHIN FOURTEEN DAYS, FAILING WHICH THE DECISION OF THE SINGLE ARBITRATOR APPOINTED SHALL BE FINAL.
GERMAN LAW SHALL BE APPLICABLE ON ALL BUNKER CONTRACTS WHICH WILL BE COVERED BY GERMAN SELLERS

HAPAG-LLOYD
AG
HAMBURG

E.W. Bunker Germany GmbH
Buchtstr. 4
22087 Hamburg
040 /32 86 900 Fax 040 /33 04 77

page 3 of 3

HPL-USOT 00041