# Exhibit NN

Page 1

- BORIS GRONENBERG -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
BONNY GAS TRANSPORT LIMITED, as     )
owner of the LNG FINIMA (IMO        )
No.7702401),                        ) CASE NO.
                                    ) 14-cv-9542 (VEC)
              Plaintiff,            )
                                    )
     -against-                      )
                                    )
O.W. BUNKER GERMANY GMBH, NUSTAR    )
TERMINALS MARINE SERVICES, N.V.,    )
NUSTAR ENERGY SERVICES, INC.,       )
ING BANK N.V.,                      )
                                    )
              Defendants.           )
------------------------------x     )
HAPAG-LLOYD AKTIENGESELLSCHAFT,     )
                                    ) CASE NO.
              Plaintiff,            ) 14-cv-9949 (VEC)
                                    )
     -against-                      )
                                    )
U.S. OIL TRADING LLC, O.W. BUNKER   )
GERMANY GMBH, O.W. BUNKER & TRADING )
A/S, ING BANK N.V., CREDIT AGRICOLE )
S.A.,                               )
                                    )
              Defendants.           )
------------------------------x     )
HAPAG-LLOYD AKTIENGESELLSCHAFT,     )
                                    ) CASE NO.
              Plaintiff,            ) 14-cv-10027 (VEC)
                                    )
     -against-                      )
                                    )
O'ROURKE MARINE SERVICES, L.P.,     )
L.L.P., O.W. BUNKER GERMANY GMBH,   )
O.W. BUNKER USA, INC., ING BANK     )
N.V.,                               )
                                    )
              Defendants.           )
------------------------------x
               February 24, 2016
                  9:05 a.m.
       DEPOSITION OF BORIS GRONENBERG

Page 2

- BORIS GRONENBERG -

```
 1
 2    UNITED STATES DISTRICT COURT    )
      SOUTHERN DISTRICT OF NEW YORK   )
 3    ----------------------------------x  )
      U.S. OIL TRADING LLC,           )
 4                                    ) CASE NO.
          Plaintiff,                  ) 15-cv-6718 (VEC)
 5                                    )
       -against-                      )
 6                                    )
      M/V VIENNA EXPRESS, her tackle, )
 7    boilers, apparel, furniture,    )
      engines, appurtenances, etc.,   )
 8    in rem: M/V SOFIA EXPRESS, her  )
      tackle, boilers, apparel,       )
 9    furniture, engines, appurtenances,  )
      etc., in rem,                   )
10                                    )
          Defendants.                 )
11    ----------------------------------x  )
      HAPAG-LLOYD AKTIENGESELLSCHAFT, as  )
12    Claimant to the M/V VIENNA EXPRESS, ) CASE NO.
                                      ) ^
13        Counter-Claimant and        )
          Third-Party Plaintiff,      )
14                                    )
       - against -                    )
15                                    )
      U.S. OIL TRADING LLC,           )
16                                    )
          Counter-Defendant and       )
17                                    ) Pages 18 - 19
      O.W. BUNKER GERMANY GMBH, O.W.  ) have been
18    BUNKER TRADING A/S, ING BANK N.V.,  ) designated as
      and CREDIT AGRICOLE CORPORATE AND ) Highly
19    INVESTMENT BANK, a division or arm ) Confidential
      of CREDIT AGRICOLE S.A.,        )
20                                    )
          Third-Party Defendant.
21    ----------------------------------x
      DATE:  February 24, 2016
22    TIME:  9:05 a.m.
23         VIDEOCONFERENCE DEPOSITION OF BORIS
      GRONENBERG, held at the offices of McDermott Will
24    & Emery, 340 Madison Avenue, New York, New York,
      pursuant to Notice, before Hope Menaker, a Shorthand
25    Reporter and Notary Public of the State of New York.
```

Page 4

- BORIS GRONENBERG -

```
 1
 2    APPEARANCES:  (cont'd)
 3    BLANK ROME LLP
      Attorneys for NuStar
 4        717 Texas Avenue, Suite 1400
          Houston, Texas  77002
 5    BY:  KEITH B. LETOURNEAU, ESQ. (Via videoconference)
 6
 7    ALSO PRESENT:
         Ms. A.J. Elterman, Interpreter
```

Page 3

- BORIS GRONENBERG -

```
 1
 2    A P P E A R A N C E S
 3    SEWARD & KISSEL LLP
      Attorneys for Defendant ING Bank N.V.,
 4    as Security Agent:
          One Battery Park Plaza
 5        New York, New York 10004
      BY:  BRIAN P. MALONEY, ESQ.
 6        LAURA E. MILLER, ESQ.
 7
      FREEHILL HOGAN & MAHAR LLP
 8    Attorneys for Hapag-Lloyd Aktiengesellschaft
          80 Pine Street
 9        New York, New York 10005
      BY:  MICHAEL FERNANDEZ, ESQ. (Via telephone)
10        MICHAEL DEHART, ESQ.
11
      CLYDE & CO. US LLP
12    Attorneys for U.S. Oil Trading LLC
          405 Lexington Avenue
13        New York, New York 10174
      BY:  CASEY D. BURLAGE, ESQ.
14
15    McDERMOTT WILL & EMERY
      Attorneys for O.W. Bunker Germany GMBH
16        340 Madison Avenue
          New York, New York 10173
17    BY:  DARREN AZMAN, ESQ.
          MICHAEL GALEN, ESQ.
18        ULRIKE WITT, ESQ.(via videoconference)
      -and-
19    HILL RIVKINS LLP
          45 Broadway, Suite 1500
20        New York, New York  10006
      BY:  JUSTIN M. HEILIG, ESQ. (via videoconference)
21
22    SIMMS SHOWERS LLP
      Attorneys for O'Rourke Marine Services L.P.
23        201 International Circle, Suite 250
          Hunt Valley, Maryland 21030
24    BY:  MARIOS J. MONOPOLIS, ESQ. (via teleconference)
25
```

Page 5

- BORIS GRONENBERG -

1      IT IS HEREBY STIPULATED AND AGREED by
2  and among the attorneys for the respective parties
3  hereto, that the sealing and filing of the within
4  deposition be waived.

5      IT IS FURTHER STIPULATED AND AGREED
6  that all objections, except as to the form, are
7  reserved to the time of trial.

8      IT IS FURTHER STIPULATED AND AGREED
9  that the within examination and any corrections
10 thereto may be signed before any Notary Public
11 with the same force and effect as if signed and
12 sworn to before this Court.

-o0o-

2 (Pages 2 to 5)

Page 42

- BORIS GRONENBERG -

1  Justin, do you have that before the
2  witness?
3      MR. HEILIG:  Yes.
4      MR. BURLAGE:  I'd like to mark this
5  as what I believe is 21 is the next exhibit.
6      (Whereupon, Exhibit 21 was marked at
7  this time.)
8  Q.  Mr. Gronenberg, do you have this
9  document?  Do you see that as the sales order
10 confirmation prepared by O.W. Bunker Germany to
11 Hapag-Lloyd; is that correct?
12 A.  Yes.
13 Q.  Take a minute to review the first
14 page of this.  Let me know when you've completed
15 that review.
16 A.  Completed.
17 Q.  You see that it's dated Hamburg 9
18 October 2014, correct?
19 A.  Correct.
20 Q.  Do you see where it says sales order
21 number 11928229.
22     Do you see that?
23 A.  Yes.
24 Q.  Is that a sales order number

Page 43

- BORIS GRONENBERG -

generated by O.W. Germany?
A.  Yes.
Q.  Would this be for the supply of fuel
oil 700 CST to the VIENNA EXPRESS at the Port of
Tacoma on October 16, 2014?
A.  Yes.
Q.  Do you see under the supplier heading
where it says U.S. Oil?
A.  Yes.
Q.  The quantity there is 2700 metric
tons; is that correct?
A.  Yes.
Q.  Can you tell me, do you see where it
says "Product/quality"?
A.  Yes.
Q.  Can you tell me what CST -- it looks
like 3,5 percent or 3.5 percent.  Can you tell me
what that means to you?
A.  CST means -- CST refers to centi
stokes.
Q.  Can you please spell that for us?
A.  C-E-N-T-I S-T-O-K-E-S.  Yeah.
Q.  Now, can you tell us?
A.  This refers --

Page 44

- BORIS GRONENBERG -

Q.  I'm sorry, go ahead.
A.  This refers to the viscosity of the
product.
Q.  Viscosity and then now that's a
quality specification?
A.  Yes.
Q.  And is that something that
Hapag-Lloyd had required for this delivery as far
as you're aware?
    MR. HEILIG:  Objection to form.
    MR. FERNANDEZ:  Objection to form.
    MR. MALONEY:  Objection.
A.  The initial inquiry or request was
like this, yes.  I'm not aware here.  From this
document must be.
Q.  Let's go down a little bit more than
halfway down the page where it says "Remarks."
    Do you see that?
A.  Yes.
Q.  Now, do you see where it says, "All
per ISO 8217 2005," and then capital letter E in
parenthesis.
    Do you see that?
A.  Yes.

Page 45

- BORIS GRONENBERG -

Q.  What does that mean?
A.  Standard specification parameters for
bunker fuel.
Q.  That's a worldwide standard?
A.  Yes.
Q.  Is that a quality standard?
A.  Quality standards are met under this
headline of ISO standards.
Q.  Now, underneath of that it says,
"HALO GTC 2007 shall apply."
    What does that mean to you?
A.  Hapag-Lloyd general terms and
conditions version 2007 to apply for this sale.
Q.  Okay.  So is it your testimony that
Hapag-Lloyd's general terms and conditions from
2007 would have applied to this sale to
Hapag-Lloyd by O.W. Germany?
A.  Yes.
Q.  Okay.  Can you please turn the page
to what's the document bearing Bates number 381
OWG 9949381.
    Do you see that?
A.  Yes.
Q.  Do you see where it says "Terms"?

Page 46

- BORIS GRONENBERG -
1
2      A.   Yes.
3      Q.   Please take a moment and read that
4  paragraph and let me know when you're done.
5      A.   Yes, I'm done.
6      Q.   Do you see the first sentence where
7  it says, "The sale and delivery of the marine
8  fuels described above are subject to the O.W.
9  Bunker" -- Mr. Gronenberg do you see it says --
10 "The sale and delivery of the marine fuels
11 described above are subject to the O.W. Bunker
12 Group's terms and conditions of sales for marine
13 bunkers."
14          Do you see that?
15     A.   I see that.
16     Q.   Do you believe that this is accurate?
17 Do the O.W. Bunker terms apply here as far as
18 you're aware?
19          MR. HEILIG:  Objection to form.
20     A.   This is the standard format of our
21 sales confirmation and under this sale, this sale
22 is subject under remarks to Hapag-Lloyd general
23 terms and conditions.
24     Q.   So is it your testimony, as far as
25 you're aware, that the Hapag-Lloyd terms and

Page 47

1             - BORIS GRONENBERG -
2  conditions 2007 apply and O.W. Bunker's general
3  terms and conditions for sale of marine bunkers do
4  not apply to this transaction?
5      A.   This is my understanding.
6      Q.   Thank you.
7           MR. BURLAGE:  Justin, can you please
8  put before the witness what has been produced
9  by O.W. Germany at OWG 9949 000197.
10          Please let me know when the witness
11 has that before him.
12          I'd like to mark this as Exhibit 22.
13          (Whereupon, Exhibit 22 was marked for
14 identification.)
15     A.   I have it in front of me.
16     Q.   Please take a moment to review this
17 and let me know when you've completed that review.
18     A.   We can continue.
19     Q.   Do you recognize this as the sales
20 order confirmation by O.W. Germany to Hapag-Lloyd
21 dated 23 October 2014?
22     A.   Yes.
23     Q.   Do you see this vessel SOFIA EXPRESS,
24 do you see where it says that?
25     A.   Yes.

Page 48

1             - BORIS GRONENBERG -
2      Q.   Would you agree that this is
3  O.W. Germany's sales order confirmation for the
4  delivery of 2700 metric tons of fuel oil to the
5  SOFIA EXPRESS at the Port of Tacoma on October 29,
6  2014?
7      A.   Yes.
8      Q.   Do you see where it says, "Supplier"
9  U.S. Oil"?
10     A.   Yes.
11     Q.   Okay.  Then under "Remarks," same
12 question where it says HALO GTC 2007 shall apply.
13          Do you see that?
14     A.   Yes.
15     Q.   Is it your understanding that
16 Hapag-Lloyd's terms and conditions 2007 apply to
17 this delivery of fuel?
18     A.   Yes.
19     Q.   Please look at the next page.  I have
20 the same question under the terms.
21     A.   Yes.
22     Q.   Is it your view that Hapag-Lloyd's
23 terms and conditions apply to this transaction and
24 O.W. Bunker's terms and conditions did not?  Is
25 that your understanding?

Page 49

1             - BORIS GRONENBERG -
2      A.   Yes.
3      Q.   Thank you.
4           MR. BURLAGE:  Justin, I'd ask that
5  you please put before the witness what's been
6  marked or produced by O.W. Germany at 000387.
7           Please mark this.
8           (Whereupon, Exhibit 23 was marked at
9  this time.)
10     A.   I have it in front of me.
11     Q.   If you just bear with me,
12 Mr. Gronenberg.  I'm going to go through the same
13 line of questioning for this as well.
14          Do you recognize this document as
15 O.W. Bunker Germany's sales order confirmation to
16 Hapag-Lloyd for the relevant delivery to the
17 SEASPAN HAMBURG at the Port of Tacoma on October
18 16, 2014?
19     A.   Yes.
20          MR. HEILIG:  Casey, are you marking
21 this as the next exhibit?
22          MR. BURLAGE:  Yes, this will be
23 marked as Exhibit 23.
24     Q.   Mr. Gronenberg, do you see the date
25 there 10 October 2014?

Page 50

- BORIS GRONENBERG -

1
2  A.  Yes.
3  Q.  The quantity of 2900 metric tons of
4  fuel oil?
5  A.  Yes.
6  Q.  And the supplier there is U.S. Oil,
7  correct?
8  A.  Correct.
9  Q.  You understand that this transaction
10 was also subject to Hapag-Lloyd's terms and
11 conditions and not O.W. Bunker's terms and
12 conditions?
13 A.  Yes.  On the remarks it always says
14 Hapag-Lloyd's general terms and conditions to
15 apply.
16 Q.  That's the general terms and
17 conditions 2007, correct?
18 A.  Correct.
19 Q.  Okay.
20    MR. BURLAGE:  Justin, please put
21    place before the witness what's been produced
22    at OWG 9949 000367 through 369.
23    This will be marked as 24.
24    (Whereupon, Exhibit 24 was marked at
25    this time.)

Page 51

- BORIS GRONENBERG -

1
2  Q.  Mr. Gronenberg, do you have this
3  document before you?
4  A.  Yes.
5  Q.  Okay.  Do you recognize this as
6  O.W. Germany's sales order confirmation to
7  Hapag-Lloyd for the subject delivery to the SANTA
8  ROBERTA at the port of Tacoma on October 9, 2014?
9  A.  Yes.
10 Q.  Do you see that it's dated 1 October
11 2014?
12 A.  Yes.
13 Q.  Do you see there that the quantity is
14 for 2700 metric tons of fuel oil to the vessel?
15 A.  Yes.
16 Q.  Do you see that the supplier listed
17 here as U.S. Oil?
18 A.  Yes.
19 Q.  Under remarks, is it correct that it
20 also lists Hapag-Lloyd's general terms and
21 conditions 2007 shall apply?
22 A.  Correct.
23 Q.  And is it your view that on this
24 transaction, Hapag-Lloyd general terms and
25 conditions 2007 applied and O.W. Bunker Germany's

Page 52

- BORIS GRONENBERG -

1
2  general terms and conditions did not apply?
3  A.  Yes.
4    MR. BURLAGE:  Okay.  Justin, can you
5    please place before the witness the PDF I
6    sent you this morning which has been produced
7    by Hapag-Lloyd and bears Bates numbers
8    HPL-USOT 00039 through 41.
9    (Whereupon, Exhibit 25 was marked at
10    this time.)
11    MR. BURLAGE:  Please let me know when
12    the witness has that before him.
13    MR. HEILIG:  We're good.
14    MR. BURLAGE:  Thank you.
15 Q.  Mr. Gronenberg, can you please take a
16 look at these three pages and let me know if you
17 have seen this document before.
18 A.  Yes, I've seen it.
19 Q.  Okay.  Do you recall the first time
20 that you have seen this document?
21 A.  No.
22 Q.  Okay.  Let's go to the last page
23 which has been marked HPL-USOT 00041.  On the
24 bottom right-hand of that page appears to be a
25 stamp by O.W. Bunker Germany GmbH with an address

Page 53

- BORIS GRONENBERG -

1
2  in Hamburg and then there's a signature beneath
3  that.
4    Do you recognize that signature?
5  A.  Yes.
6  Q.  Whose signature is that?
7  A.  Mr. Lehsten.
8  Q.  Okay.  What about the -- looks like
9  there's a scribble or an initial on the bottom
10 right of the first two pages of this document.
11    Do you see that?
12 A.  Yes.
13 Q.  Do you recognize that as
14 Mr. Lehsten's initial?
15 A.  Yes.
16 Q.  Okay.  What is your understanding of
17 what this document is?
18 A.  The general terms and conditions
19 which Hapag-Lloyd requests for purchasing bunkers.
20 Q.  Would you agree that this is
21 Hapag-Lloyd's general terms and conditions for
22 what's been listed as 2007 which would apply to
23 the four shipments we just discussed?
24    MR. HEILIG:  Objection to form.
25 A.  When is this dated 2007, yes.  I

14 (Pages 50 to 53)

Page 54

- BORIS GRONENBERG -

1  
2  don't know, is it?
3      Q.   Well, it's a little difficult to
4  tell, but it looks like underneath that stamp
5  there may be a date but I can't tell if that is
6  correct, but -- would this be a document that
7  would have been maintained in O.W. Germany's files
8  in its regular course of business?
9      A.   Yes.
10     Q.   Okay and yesterday Mr. Lehsten
11 testified that as part of a condition with doing
12 business with Hapag, Hapag required O.W. Germany
13 to sell basis Hapag's terms and conditions.
14          Would you agree with that?
15          MR. HEILIG:  Objection to form.
16     A.   Yes.
17     Q.   Is -- that would -- that would apply
18 for these four shipments to your understanding?
19     A.   Yes.
20     Q.   Do you know if O.W. Germany -- let me
21 just back up.
22          You said that you were department
23 manager from 2009 at O.W. Germany in its trading
24 department; is that correct?
25     A.   Correct.

Page 55

- BORIS GRONENBERG -

1  
2      Q.   Now, is the trading department the
3  same as the reselling department or the resale
4  department or are those different?
5      A.   No, it's the same just a different --
6          MR. HEILIG:  Finish your answer.
7      A.   Just a different wording or naming
8  it.
9      Q.   But it's the same department then?
10     A.   Yes.
11     Q.   Do you know if O.W. Germany
12 physically supplied fuel on the west coast of the
13 United States at any point in 2014?
14         MR. HEILIG:  Objection to form.
15         MR. DEHART:  Objection to form.
16         MR. FERNANDEZ:  Objection to form.
17     Q.   Are you aware that if O.W. Germany
18 had the capability to supply fuel physically in
19 the port of Tacoma, Washington in 2014.
20         MR. BURLAGE:  Let him answer.
21         MR. HEILIG:  Objection.
22         MR. FERNANDEZ:  Objection to form as
23 well.
24     Q.   Did we have an answer?
25     A.   I said no.

Page 56

- BORIS GRONENBERG -

1  
2      Q.   Okay.  Do you know if O.W. Bunker
3  U.S.A. had the capability to supply fuel
4  physically in Tacoma in 2014?
5          MR. HEILIG:  Objection to form.
6          MR. FERNANDEZ:  Objection to form.
7      A.   No.
8      Q.   No, you don't know; or no, they did
9  not have the capability to do so as far as you are
10 aware?
11     A.   As far as I'm aware, they did not
12 have the capability.
13     Q.   Would that be the same with O.W.
14 Germany?
15         MR. HEILIG:  Same objection.
16         MR. FERNANDEZ:  Same objection.
17     A.   Yes.
18         MR. BURLAGE:  Justin, can you please
19 place before the witness what's been produced
20 by O.W. Germany and it bears Bates numbers
21 OWG 9949 - 00446 through 449.
22         Please let me know when the witness
23 has that before him.
24         MR. HEILIG:  He has it.
25     Q.   Mr. Gronenberg, can you please take a

Page 57

- BORIS GRONENBERG -

1  
2  look at these couple of pages of documents and let
3  me know when you've completed your review.
4      A.   Okay.
5      Q.   Would you agree that this is an
6  e-mail from Kai Zu to Karl-Heinz Selmer dated
7  October 1st, 2014, with the subject line Re: ENQ
8  SANTA ROBERTA?
9          MR. MALONEY:  Do you have a copy of
10 that?
11         MR. DEHART:  Yes.
12         MR. HEILIG:  Are we marking this as
13 an exhibit?
14         MR. BURLAGE:  I don't know yet, hold
15 on a second, please.
16     Q.   Do we have an answer to that last
17 question, please?
18     A.   Yes.
19     Q.   What do you understand that -- let me
20 back up quickly.
21         Kai Zu, do you know who that is?
22     A.   My colleague in the U.S.
23     Q.   Is that a male or female?
24     A.   A male.
25     Q.   Does he work in the Houston office of

Page 58

- BORIS GRONENBERG -

1  
2  O.W. Bunker U.S.A., is that correct or did he?  
3  A.  Correct.  
4  Q.  Did he?  
5  A.  Yes.  
6  Q.  As you understand it, what is Mr. Zu  
7  saying to Mr. Selmer here where he says, "Good  
8  morning, Karl. Let's get it today."  
9  And then under Tacoma -- do you see  
10 where it says Tacoma?  
11 A.  Yes.  
12 Q.  Then he lists P66 Tesoro and U.S.  
13 Oil. Are P66 and Tesoro -- what is your  
14 understanding of those two companies?  
15      MR. HEILIG: Objection to form.  
16 A.  Suppliers in Tacoma.  
17 Q.  They're physical suppliers of fuel in  
18 Tacoma along with U.S. Oil; is that correct?  
19      MR. HEILIG: Objection to form.  
20 A.  Correct.  
21 Q.  Do you see where it says in bold,  
22 "U.S. Oil let's get the RMK for him"?  
23 A.  Yes.  
24 Q.  Do you know what that means, "Let's  
25 get the RMK for him"?  

Page 59

- BORIS GRONENBERG -

1  
2      Do you have any understanding of what  
3  that might mean?  
4  A.  Yes. Yes, that Kai suggests to Karl  
5  to fix -- to fix an RMK with U.S. Oil.  
6  Q.  And underneath that "549/MTD for  
7  RMK," in bold. Would that be the price that Kai  
8  Zu has conveyed to Karl that has been provided by  
9  U.S. Oil? Is that your understanding?  
10     MR. HEILIG: Objection to form.  
11 A.  Yes.  
12 Q.  Then under that it says, "Typicals."  
13 And then it lists, looks like some numbers for  
14 "API/bore, sulphur, aluminum, silicon, sodium,"  
15 et cetera.  
16     Are those -- is it your understanding  
17 that those are also typicals that Kai is giving to  
18 Karl that he had received from U.S. Oil?  
19     MR. HEILIG: Objection to form.  
20     MR. DEHART: Objection to form.  
21     MR. FERNANDEZ: Objection to form.  
22     MR. MALONEY: Objection.  
23 A.  That's how I understand it, yes.  
24 Q.  Now, would O.W. Germany, in this case  
25 Mr. Selmer, in its regular course of business,  

Page 60

- BORIS GRONENBERG -

1  
2  would it then convey those typicals to Hapag?  
3  A.  Upon request, yes.  
4  Q.  And how would that be done, by phone  
5  or by e-mail, do you know?  
6  A.  Either way.  
7  Q.  Either way. Okay. But you don't  
8  know in this case if that was done by e-mail or by  
9  phone, do you?  
10 A.  I don't know.  
11 Q.  Okay. But did you understand that  
12 Hapag had instructed that fuel being supplied to  
13 this vessel would need certain specifications?  
14     MR. HEILIG: Objection, form.  
15     MR. FERNANDEZ: Objection to form.  
16     MR. MALONEY: Same objection.  
17 A.  Not really.  
18 Q.  Okay. In your experience, did Hapag  
19 require that the fuel delivered to its vessels  
20 have certain specifications?  
21     MR. HEILIG: Objection to form.  
22     MR. FERNANDEZ: Objection to form.  
23 A.  Yes.  
24 Q.  How do you know that?  
25 A.  They would like to see or compare  

Page 61

- BORIS GRONENBERG -

1  
2  also the typical specifications of the product  
3  offered in order to determine which products they  
4  find most suitable for their vessels engines.  
5  Q.  And so they would use the typicals to  
6  determine which fuel they wanted to select to  
7  have?  
8      MR. HEILIG: Objection.  
9  A.  Not only typicals --  
10     MR. FERNANDEZ: Objection.  
11 Q.  I'm sorry, continue.  
12 A.  Not only the typicals. Of course  
13 also the price.  
14 Q.  So your understanding is that  
15 Hapag-Lloyd would consider both the typicals  
16 provided by the supplier and the price to  
17 determine which set of fuel to purchase?  
18     MR. FERNANDEZ: Objection to form.  
19     MR. HEILIG: Objection to form.  
20     MR. HEILIG: Objection to form.  
21 A.  Yes.  
22 Q.  Thank you.  
23     MR. BURLAGE: I'll mark this as  
24 Exhibit 26, please.  
25     (Whereupon, Exhibit 26 was marked at  

16 (Pages 58 to 61)

Page 62

- BORIS GRONENBERG -

1  this time.)
2  MR. HEILIG: Is that 25?
3  MR. BURLAGE: 25 was the GTCs.
4  MR. HEILIG: I'm sorry.
5  MR. BURLAGE: This is 26.
6  Justin, can you please put before the
7  witness what's been produced by O.W. Germany
8  and marked OWG 9949-000042. I will mark this
9  as the next exhibit, 27, please.
10  (Whereupon, Exhibit 27 was marked at
11  this time.)
12  MR. BURLAGE: Please let me know when
13  the witness has that before him.
14  THE WITNESS: I've got it.
15  Q. Mr. Gronenberg, have you ever seen
16  this document before?
17  A. No.
18  Q. Okay. Do you recognize this as an
19  invoice produced by O.W. Bunker Germany?
20  A. Yes.
21  Q. Is this a document that would be
22  produced in O.W. Germany's regular course of
23  business?
24  A. Correct.

Page 63

- BORIS GRONENBERG -

1  Q. Is it the regular course of O.W.
2  Germany's business to produce such documents?
3  MR. HEILIG: Objection to form.
4  A. Yes.
5  Q. Okay. Please just take a moment to
6  familiarize yourself with the document and just
7  let me know when you're ready to discuss.
8  A. I'm okay. Ready.
9  Q. Do you see on the top right there
10  that's the date of invoice 9 October 2014?
11  Do you see that?
12  A. Yes.
13  Q. Do you see underneath that invoice
14  number it lists 119-29378.
15  Do you see that?
16  A. Yes.
17  Q. Is that an O.W. Bunker Germany
18  invoice number?
19  A. Correct.
20  Q. Under that you see order number
21  119-28179?
22  A. Yes.
23  Q. This would be for the supply listed 9
24  October 2014, correct?

Page 64

- BORIS GRONENBERG -

1  A. Correct.
2  Q. Okay. Due date 8 November 2014,
3  correct?
4  A. Correct.
5  Q. So, is it fair to say would you agree
6  that this is the invoice generated by O.W. Bunker
7  Germany to Hapag-Lloyd for the supply of fuel oil
8  approximately 2700 metric tons of fuel oil to the
9  MV SANTA ROBERTA on October 9, 2014?
10  A. Yes.
11  Q. You see that O.W. Germany as invoiced
12  an amount of USD 1,495,860.94; is that correct?
13  A. Yes.
14  MR. BURLAGE: Okay. Justin, please
15  place before the witness a document, OWG
16  9949-000130. And I'll mark this as I believe
17  we're up to 28.
18  (Whereupon, Exhibit 28 was marked at
19  this time.)
20  THE WITNESS: I got it.
21  Q. Have you seen this document before,
22  Mr. Gronenberg?
23  A. No.
24  Q. Do you recognize what this document

Page 65

- BORIS GRONENBERG -

1  is?
2  A. Yes.
3  Q. What is it?
4  A. Information from Hapag-Lloyd to us
5  about payment.
6  Q. "To us," do you mean O.W. Germany,
7  correct?
8  A. Correct.
9  Q. Is this a document that O.W. Germany
10  would receive in its regular course of business
11  with Hapag?
12  A. Yes, we regularly receive those.
13  Q. The word -- you have to forgive me
14  because I don't speak German -- the word on the
15  top of this box, the shaded box, "zahlungsavis,"
16  can you please tell me what that means?
17  A. Yes. Payment information.
18  Q. Could you please read for the record
19  the first few lines of text underneath of that in
20  English?
21  MR. HEILIG: Objection. How about we
22  have the interpreter do that?
23  MR. BURLAGE: That's fine.
24  THE INTERPRETER: Ladies and

Page 66

- BORIS GRONENBERG -

1
2  gentlemen, so per the transfer to abroad,
3  meaning the transfer made abroad number
4  59564776, we have settled the following
5  items, subject to the correctness of your
6  delivery or performance/payment and its
7  accounting calculation.
8      It has many meaning in this case or
9  accounting for it or something.
10     We have settled subject to
11 correctness.
12     MR. MALONEY: I'm just going to make
13 a note for the record that the interpreter is
14 here to translate the oral questions and
15 answers.
16     MR. BURLAGE: Fair. We can move on.
17     THE INTERPRETER: It's a lot of terms
18 depending --
19     MR. BURLAGE: Understood. I'm going
20 to turn back to the witness, Justin.
21  Q.   Mr. Gronenberg, what is your
22 understanding of what this document means?
23  A.   Confirmation of payment to us.
24  Q.   Confirmation of payment for what?
25  A.   For the supplies listed here.

Page 67

- BORIS GRONENBERG -

1
2  Q.   Okay. Let me turn your attention to
3  the second, are these vessels listed under the
4  column that says datum or datum, D-A-T-U-M?
5  A.   Yes, below the date are vessel names.
6  Q.   Now, let me direct your attention to
7  I guess the second entry from the bottom. Do you
8  see in the column, the second column from the left
9  where it says 119-29378?
10     Do you see that?
11 A.   Yes.
12 Q.   Then moving over, do you see -- is
13 that correct to state that that is October 9, 2014
14 is the date?
15 A.   Correct.
16 Q.   And moving over where it says 1 -- is
17 that correct that that would represent
18 $1,495,860.94?
19 A.   Correct.
20 Q.   That would be for the delivery of
21 fuel to the SANTA ROBERTA on October 9, 2014,
22 correct?
23 A.   Correct.
24 Q.   Okay. Now, can I just turn your
25 attention to Exhibit 27 which was the invoice that

Page 68

- BORIS GRONENBERG -

1
2  we just reviewed.
3      MR. HEILIG: Page 42.
4  A.   Yes.
5  Q.   Looking at these two documents
6  together and the entry that we just reviewed for
7  the SANTA ROBERTA on what's been marked as Exhibit
8  28, would you agree with me that this Exhibit 28
9  is a payment advice from Hapag-Lloyd telling
10 O.W. Germany that it has paid O.W. Germany for the
11 delivery of fuel to the SANTA ROBERTA which is
12 reflected on this invoice for Exhibit 27?
13     MR. HEILIG: Objection the to form.
14     MR. FERNANDEZ: Objection to form.
15 A.   Yes.
16 Q.   Sorry, what was the answer?
17 A.   Yes.
18 Q.   You agree that the invoice number on
19 Exhibit 27 matches the invoice number on Exhibit
20 28?
21 A.   Yes.
22 Q.   Now, do you know -- are you aware
23 whether O.W. Germany has been paid for this
24 delivery?
25 A.   No, I don't know if they received the

Page 69

- BORIS GRONENBERG -

1
2  fund.
3  Q.   Who would know that?
4  A.   Nowadays the insolvency
5  administrator.
6  Q.   Now, in the regular course of
7  O.W. Germany's business, would there be a record
8  of such a payment made by Hapag to O.W. Germany?
9  A.   I don't understand your question.
10 Q.   Okay. Would there be an accounting
11 of this -- receipt of this payment by Hapag in
12 O.W. Germany's files?
13     MR. HEILIG: Objection to form.
14 A.   Normally, yes.
15 Q.   Would that be electronic or in a
16 paper file?
17 A.   Both.
18 Q.   Both, okay.
19     Do you know if O.W. Germany has
20 produced that record of payment in this action?
21 A.   No, I don't know.
22     MR. HEILIG: Note my objection.
23     MR. BURLAGE: To the extent it hasn't
24 been produced we'll request that it be
25 produced.

Elisa Dreier Reporting Corp., a U.S. Legal Support Company (212)557-5558
950 Third Avenue, New York, NY 10022