# EXHIBIT 10

- BORIS GRONENBERG -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------X

BONNY GAS TRANSPORT LIMITED, as owner of the LNG FINIMA (IMO No.7702401),

Plaintiff,

-against-

O.W. BUNKER GERMANY GMBH, NUSTAR TERMINALS MARINE SERVICES, N.V., NUSTAR ENERGY SERVICES, INC., ING BANK N.V.,

Defendants.

CASE NO. 14-cv-9542 (VEC)

----------------------------------x

HAPAG-LLOYD AKTIENGESELLSCHAFT,

Plaintiff,

-against-

U.S. OIL TRADING LLC, O.W. BUNKER GERMANY GMBH, O.W. BUNKER & TRADING A/S, ING BANK N.V., CREDIT AGRICOLE S.A.,

Defendants.

CASE NO. 14-cv-9949 (VEC)

--------------------------------x

HAPAG-LLOYD AKTIENGESELLSCHAFT,

Plaintiff,

-against-

O'ROURKE MARINE SERVICES, L.P., L.L.P., O.W. BUNKER GERMANY GMBH, O.W. BUNKER USA, INC., ING BANK N.V.,

Defendants.

CASE NO. 14-cv-10027 (VEC)

--------------------------------x

February 24, 2016
9:05 a.m.

DEPOSITION OF BORIS GRONENBERG

- BORIS GRONENBERG -

UNITED STATES DISTRICT COURT )
SOUTHERN DISTRICT OF NEW YORK )
----------------------------------x )
U.S. OIL TRADING LLC, )
) CASE NO.
Plaintiff, ) 15-cv-6718 (VEC)
)
-against- )
)
M/V VIENNA EXPRESS, her tackle, )
boilers, apparel, furniture, )
engines, appurtenances, etc., )
in rem: M/V SOFIA EXPRESS, her )
tackle, boilers, apparel, )
furniture, engines, appurtenances, )
etc., in rem, )
)
Defendants. )
----------------------------------x )
HAPAG-LLOYD AKTIENGESELLSCHAFT, as )
Claimant to the M/V VIENNA EXPRESS, ) CASE NO.
) ^
Counter-Claimant and )
Third-Party Plaintiff, )
)
- against - )
)
U.S. OIL TRADING LLC, )
)
Counter-Defendant and )
) Pages 18 - 19
O.W. BUNKER GERMANY GMBH, O.W. ) have been
BUNKER TRADING A/S, ING BANK N.V., ) designated as
and CREDIT AGRICOLE CORPORATE AND ) Highly
INVESTMENT BANK, a division or arm ) Confidential
of CREDIT AGRICOLE S.A., )

Third-Party Defendant.
----------------------------------x

DATE: February 24, 2016
TIME: 9:05 a.m.

VIDEOCONFERENCE DEPOSITION OF BORIS GRONENBERG, held at the offices of McDermott Will & Emery, 340 Madison Avenue, New York, New York, pursuant to Notice, before Hope Menaker, a Shorthand Reporter and Notary Public of the State of New York.

- BORIS GRONENBERG -

A P P E A R A N C E S

SEWARD & KISSEL LLP
Attorneys for Defendant ING Bank N.V., as Security Agent:
One Battery Park Plaza
New York, New York 10004
BY: BRIAN P. MALONEY, ESQ.
LAURA E. MILLER, ESQ.

FREEHILL HOGAN & MAHAR LLP
Attorneys for Hapag-Lloyd Aktiengesellschaft
80 Pine Street
New York, New York 10005
BY: MICHAEL FERNANDEZ, ESQ. (Via telephone)
MICHAEL DEHART, ESQ.

CLYDE & CO. US LLP
Attorneys for U.S. Oil Trading LLC
405 Lexington Avenue
New York, New York 10174
BY: CASEY D. BURLAGE, ESQ.

McDERMOTT WILL & EMERY
Attorneys for O.W. Bunker Germany GMBH
340 Madison Avenue
New York, New York 10173
BY: DARREN AZMAN, ESQ.
MICHAEL GALEN, ESQ.
ULRIKE WITT, ESQ.(via videoconference)
-and-
HILL RIVKINS LLP
45 Broadway, Suite 1500
New York, New York 10006
BY: JUSTIN M. HEILIG, ESQ. (via videoconference)

SIMMS SHOWERS LLP
Attorneys for O'Rourke Marine Services L.P.
201 International Circle, Suite 250
Hunt Valley, Maryland 21030
BY: MARIOS J. MONOPOLIS, ESQ. (via teleconference)

- BORIS GRONENBERG -

APPEARANCES: (cont'd)

BLANK ROME LLP
Attorneys for NuStar
717 Texas Avenue, Suite 1400
Houston, Texas 77002
BY: KEITH B. LETOURNEAU, ESQ. (Via videoconference)

ALSO PRESENT:
Ms. A.J. Elterman, Interpreter

- BORIS GRONENBERG -

IT IS HEREBY STIPULATED AND AGREED by and among the attorneys for the respective parties hereto, that the sealing and filing of the within deposition be waived.

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form, are reserved to the time of trial.

IT IS FURTHER STIPULATED AND AGREED that the within examination and any corrections thereto may be signed before any Notary Public with the same force and effect as if signed and sworn to before this Court.

-o0o-

- BORIS GRONENBERG -

of that e-mail?

A. We have won the stem on the bidding platform and Karl is asking Pablo to ensure a good profit for us.

Q. Then if we look at the next page, Bates-stamped 433, e-mail from Pablo Sanso to Karl-Heinz Selmer and it reads, at least the first part, "Thanks, Karl. $10 metric ton!? That's pretty optimistic I'd say."

Did I read that correctly?

A. Yes.

Q. Then the last sentence of that e-mail says, "Sorry for the mess here, sir. I'll keep you posted."

Did I read that correctly?

A. Yes.

Q. So, these e-mails, you would agree with me, are an exchange between Karl-Heinz Selmer at O.W. Germany and Pablo Sanso at O.W. U.S.A. about the margins to be obtained for the sale of bunkers to the LNG FINIMA correct?

MR. HEILIG: Objection to form.

A. Yes.

Q. Would you agree with me, sir, that in

- BORIS GRONENBERG -

an arm's-length transaction between two companies that are not affiliated with each other, that it would be highly unusual for you to share margin information between those companies?

MR. HEILIG: Objection to form.

A. No, because there was an agreed profit sharing agreement between internal offices.

Q. Is that a written document, a written profit sharing agreement?

A. I'm not aware of any written document.

Q. It's just a practice of sharing profits between different offices, correct?

MR. HEILIG: Objection form.

A. Between internal O.W. Bunker offices, yes.

Q. Sir, were you aware of any financial problems involving the O.W. Bunker Group before the collapse in early November 2014?

A. No, not at all.

Q. Let's look at the sales order confirmation which we have marked as Exhibit Number 13.

MR. HEILIG: Keith, what's the Bates

- BORIS GRONENBERG -

on it.

MR. LETOURNEAU: The Bates is Bonny Gas 0030 to 0032.

Q. Do you have that in front of you, sir?

A. Yes.

Q. This is the sales order confirmation issued by O.W. Bunker to Nigeria LNG for the supply of bunkers to the LNG FINIMA, correct?

A. Correct.

Q. And it is dated in Hamburg 24 October 2014, correct?

A. Correct.

Q. And it shows the delivery date between 29 October 2014 and 29 October 2014, correct?

A. Correct.

Q. It also identifies the supplier as NuStar, correct, in the middle of the page?

A. Correct.

Q. You would agree with me that this sales order confirmation would have been provided by O.W. Bunker to Nigeria LNG in advance of the actual delivery of the bunkers to the LNG FINIMA,

- BORIS GRONENBERG -

correct?

A. Correct.

Q. And it appears, if you look on the lower left-hand portion of the document, it's in very fine print, there appears to be some information about how the document was transmitted.

Do you see that?

MR. HEILIG: Keith, where are you looking?

Q. In the lower left-hand portion of the document. It says, "O.W.B. SG D 119 stand 24102014" and then it has a time in CET.

Do you see that?

A. Yes.

Q. So that appears to be some form of transmittal from O.W. Germany of this document.

Would you agree with that?

MR. MALONEY: Objection to form.

A. I've never seen it before.

Q. Okay. Understood.

MR. LETOURNEAU: I don't know if I have too much more. If I could just take a short break and look over my notes.

- BORIS GRONENBERG -

A. Yes.

Q. The quantity of 2900 metric tons of fuel oil?

A. Yes.

Q. And the supplier there is U.S. Oil, correct?

A. Correct.

Q. You understand that this transaction was also subject to Hapag-Lloyd's terms and conditions and not O.W. Bunker's terms and conditions?

A. Yes. On the remarks it always says Hapag-Lloyd's general terms and conditions to apply.

Q. That's the general terms and conditions 2007, correct?

A. Correct.

Q. Okay.

MR. BURLAGE: Justin, please put place before the witness what's been produced at OWG 9949 000367 through 369.

This will be marked as 24.

(Whereupon, Exhibit 24 was marked at this time.)

- BORIS GRONENBERG -

Q. Mr. Gronenberg, do you have this document before you?

A. Yes.

Q. Okay. Do you recognize this as O.W. Germany's sales order confirmation to Hapag-Lloyd for the subject delivery to the SANTA ROBERTA at the port of Tacoma on October 9, 2014?

A. Yes.

Q. Do you see that it's dated 1 October 2014?

A. Yes.

Q. Do you see there that the quantity is for 2700 metric tons of fuel oil to the vessel?

A. Yes.

Q. Do you see that the supplier listed here as U.S. Oil?

A. Yes.

Q. Under remarks, is it correct that it also lists Hapag-Lloyd's general terms and conditions 2007 shall apply?

A. Correct.

Q. And is it your view that on this transaction, Hapag-Lloyd general terms and conditions 2007 applied and O.W. Bunker Germany's

- BORIS GRONENBERG -

general terms and conditions did not apply?

A. Yes.

MR. BURLAGE: Okay. Justin, can you please place before the witness the PDF I sent you this morning which has been produced by Hapag-Lloyd and bears Bates numbers HPL-USOT 00039 through 41.

(Whereupon, Exhibit 25 was marked at this time.)

MR. BURLAGE: Please let me know when the witness has that before him.

MR. HEILIG: We're good.

MR. BURLAGE: Thank you.

Q. Mr. Gronenberg, can you please take a look at these three pages and let me know if you have seen this document before.

A. Yes, I've seen it.

Q. Okay. Do you recall the first time that you have seen this document?

A. No.

Q. Okay. Let's go to the last page which has been marked HPL-USOT 00041. On the bottom right-hand of that page appears to be a stamp by O.W. Bunker Germany GmbH with an address

- BORIS GRONENBERG -

in Hamburg and then there's a signature beneath that.

Do you recognize that signature?

A. Yes.

Q. Whose signature is that?

A. Mr. Lehsten.

Q. Okay. What about the -- looks like there's a scribble or an initial on the bottom right of the first two pages of this document.

Do you see that?

A. Yes.

Q. Do you recognize that as Mr. Lehsten's initial?

A. Yes.

Q. Okay. What is your understanding of what this document is?

A. The general terms and conditions which Hapag-Lloyd requests for purchasing bunkers.

Q. Would you agree that this is Hapag-Lloyd's general terms and conditions for what's been listed as 2007 which would apply to the four shipments we just discussed?

MR. HEILIG: Objection to form.

A. When is this dated 2007, yes. I

Page 54

- BORIS GRONENBERG -

don't know, is it?

Q. Well, it's a little difficult to tell, but it looks like underneath that stamp there may be a date but I can't tell if that is correct, but -- would this be a document that would have been maintained in O.W. Germany's files in its regular course of business?

A. Yes.

Q. Okay and yesterday Mr. Lehsten testified that as part of a condition with doing business with Hapag, Hapag required O.W. Germany to sell basis Hapag's terms and conditions.

Would you agree with that?

MR. HEILIG: Objection to form.

A. Yes.

Q. Is -- that would -- that would apply for these four shipments to your understanding?

A. Yes.

Q. Do you know if O.W. Germany -- let me just back up.

You said that you were department manager from 2009 at O.W. Germany in its trading department; is that correct?

A. Correct.

Page 55

- BORIS GRONENBERG -

Q. Now, is the trading department the same as the reselling department or the resale department or are those different?

A. No, it's the same just a different --

MR. HEILIG: Finish your answer.

A. Just a different wording or naming it.

Q. But it's the same department then?

A. Yes.

Q. Do you know if O.W. Germany physically supplied fuel on the west coast of the United States at any point in 2014?

MR. HEILIG: Objection to form.

MR. DEHART: Objection to form.

MR. FERNANDEZ: Objection to form.

Q. Are you aware that if O.W. Germany had the capability to supply fuel physically in the port of Tacoma, Washington in 2014.

MR. BURLAGE: Let him answer.

MR. HEILIG: Objection.

MR. FERNANDEZ: Objection to form as well.

Q. Did we have an answer?

A. I said no.

Page 56

- BORIS GRONENBERG -

Q. Okay. Do you know if O.W. Bunker U.S.A. had the capability to supply fuel physically in Tacoma in 2014?

MR. HEILIG: Objection to form.

MR. FERNANDEZ: Objection to form.

A. No.

Q. No, you don't know; or no, they did not have the capability to do so as far as you are aware?

A. As far as I'm aware, they did not have the capability.

Q. Would that be the same with O.W. Germany?

MR. HEILIG: Same objection.

MR. FERNANDEZ: Same objection.

A. Yes.

MR. BURLAGE: Justin, can you please place before the witness what's been produced by O.W. Germany and it bears Bates numbers OWG 9949 - 00446 through 449.

Please let me know when the witness has that before him.

MR. HEILIG: He has it.

Q. Mr. Gronenberg, can you please take a

Page 57

- BORIS GRONENBERG -

look at these couple of pages of documents and let me know when you've completed your review.

A. Okay.

Q. Would you agree that this is an e-mail from Kai Zu to Karl-Heinz Selmer dated October 1st, 2014, with the subject line Re: ENQ SANTA ROBERTA?

MR. MALONEY: Do you have a copy of that?

MR. DEHART: Yes.

MR. HEILIG: Are we marking this as an exhibit?

MR. BURLAGE: I don't know yet, hold on a second, please.

Q. Do we have an answer to that last question, please?

A. Yes.

Q. What do you understand that -- let me back up quickly.

Kai Zu, do you know who that is?

A. My colleague in the U.S.

Q. Is that a male or female?

A. A male.

Q. Does he work in the Houston office of

- BORIS GRONENBERG -

O.W. Bunker U.S.A., is that correct or did he?

A. Correct.

Q. Did he?

A. Yes.

Q. As you understand it, what is Mr. Zu saying to Mr. Selmer here where he says, "Good morning, Karl. Let's get it today."

And then under Tacoma -- do you see where it says Tacoma?

A. Yes.

Q. Then he lists P66 Tesoro and U.S. Oil. Are P66 and Tesoro -- what is your understanding of those two companies?

MR. HEILIG: Objection to form.

A. Suppliers in Tacoma.

Q. They're physical suppliers of fuel in Tacoma along with U.S. Oil; is that correct?

MR. HEILIG: Objection to form.

A. Correct.

Q. Do you see where it says in bold, "U.S. Oil let's get the RMK for him"?

A. Yes.

Q. Do you know what that means, "Let's get the RMK for him"?

- BORIS GRONENBERG -

Do you have any understanding of what that might mean?

A. Yes. Yes, that Kai suggests to Karl to fix -- to fix an RMK with U.S. Oil.

Q. And underneath that "549/MTD for RMK," in bold. Would that be the price that Kai Zu has conveyed to Karl that has been provided by U.S. Oil? Is that your understanding?

MR. HEILIG: Objection to form.

A. Yes.

Q. Then under that it says, "Typicals." And then it lists, looks like some numbers for "API/bore, sulphur, aluminum, silicon, sodium," et cetera.

Are those -- is it your understanding that those are also typicals that Kai is giving to Karl that he had received from U.S. Oil?

MR. HEILIG: Objection to form.

MR. DEHART: Objection to form.

MR. FERNANDEZ: Objection to form.

MR. MALONEY: Objection.

A. That's how I understand it, yes.

Q. Now, would O.W. Germany, in this case Mr. Selmer, in its regular course of business,

- BORIS GRONENBERG -

would it then convey those typicals to Hapag?

A. Upon request, yes.

Q. And how would that be done, by phone or by e-mail, do you know?

A. Either way.

Q. Either way. Okay. But you don't know in this case if that was done by e-mail or by phone, do you?

A. I don't know.

Q. Okay. But did you understand that Hapag had instructed that fuel being supplied to this vessel would need certain specifications?

MR. HEILIG: Objection, form.

MR. FERNANDEZ: Objection to form.

MR. MALONEY: Same objection.

A. Not really.

Q. Okay. In your experience, did Hapag require that the fuel delivered to its vessels have certain specifications?

MR. HEILIG: Objection to form.

MR. FERNANDEZ: Objection to form.

A. Yes.

Q. How do you know that?

A. They would like to see or compare

- BORIS GRONENBERG -

also the typical specifications of the product offered in order to determine which products they find most suitable for their vessels engines.

Q. And so they would use the typicals to determine which fuel they wanted to select to have?

MR. HEILIG: Objection.

A. Not only typicals --

MR. FERNANDEZ: Objection.

Q. I'm sorry, continue.

A. Not only the typicals. Of course also the price.

Q. So your understanding is that Hapag-Lloyd would consider both the typicals provided by the supplier and the price to determine which set of fuel to purchase?

MR. FERNANDEZ: Objection to form.

MR. HEILIG: Objection to form.

MR. HEILIG: Objection to form.

A. Yes.

Q. Thank you.

MR. BURLAGE: I'll mark this as Exhibit 26, please.

(Whereupon, Exhibit 26 was marked at

Page 70

- BORIS GRONENBERG -

I have no further questions at this time. Mr. Gronenberg, thank you very much, and with that I'll pass the witness.

MR. DEHART: Mike, are you there?

MR. FERNANDEZ: I'm thinking if we have any other questions. I don't know if anyone has anything first.

MR. AZMAN: Do you want to take a quick two- or three-minute break?

MR. MALONEY: Let's take a five-minute break.

(Whereupon, there was a brief recess in the proceedings.)

MR. AZMAN: Marios, do you want to go next?

MR. MONOPOLIS: I'm happy to.

EXAMINATION BY MR. MONOPOLIS:

Q. Good morning/afternoon. This is Marios Monopolis, I represent O'Rourke Marine in case number 14 CV 10027.

Mr. Gronenberg, can you hear me?

A. Yes, I can hear you.

Q. Okay. Great.

I apologize, I'm only participating

Page 71

- BORIS GRONENBERG -

by phone today so you can't see me and I can't see you.

I'm going to ask you a few questions about O.W. Germany's role in the bunker supply to two Hapag vessels, the DERBY D and the SYDNEY EXPRESS.

MR. MALONEY: Mario, you're very low.

MR. MONOPOLIS: I apologize, I went on speaker. Let me repeat that question or the statement rather.

Q. I'd like to ask you a few questions about O.W. Germany's role with respect to the bunker supply to two Hapag vessels, the DERBY D and the SYDNEY EXPRESS.

Mr. Gronenberg, are you familiar those two vessels?

A. Yes.

Q. Are you familiar with O.W. Germany's role with respect to the supply of bunkers to those vessels?

A. Yes.

Q. Okay. Would you describe for me, please, just in general terms the relationship between O.W. Germany and O.W. U.S.A.

Page 72

- BORIS GRONENBERG -

A. They were our colleagues and the relationship was that they were in charge of procurement of all the group bunkers in the Americas.

Q. Okay. Thank you.

Would you happen to know approximately how many transactions occurred between O.W. Germany and O.W. U.S.A. in 2014 and an estimate is fine.

A. No, I could not estimate, although the oil we were overseeing 400 inquiries per month with 200 nominations on average and I don't know which -- how many of them were with the U.S. colleagues. I do not know.

Q. Would it be safe to assume, and I recognize this is an assumption, that O.W. Germany and O.W. U.S.A. collaborated on more than just the supply of the DERBY D and the SYDNEY EXPRESS?

MR. HEILIG: Objection to form.

MR DEHART: Objection.

MR. FERNANDEZ: Objection.

MR. HEILIG: You can answer.

A. Yes.

Q. In the transactions between O.W.

Page 73

- BORIS GRONENBERG -

Germany and O.W. U.S.A., was there a standing contract or was there contracting on an ad hoc basis?

MR. HEILIG: Objection to form.

A. It was based on standard procedures and normal purchase and sales information.

Q. For those purchase and sale confirmations, did any of those purchase or sale confirmations refer to a specific set of terms and conditions?

A. That would be the O.W. Bunker Germany terms.

Q. Are the O.W. Bunker Germany terms different than the O.W. general terms and conditions for the whole group?

A. I corrected that, O.W. Bunker Group terms.

Q. Just to be clear, the O.W. Bunker Group terms governed the contractual relationship between O.W. Germany and O.W. U.S.A.; is that correct?

A. Correct.

Q. Okay. Are you familiar with the O.W. Group terms and conditions?

Page 78

- BORIS GRONENBERG -
instructed not to answer or he can answer?
MR. HEILIG: He can answer, if he knows. Subject to our objection.
Q. Mr. Gronenberg --
MR. MONOPOLIS: I'm sorry, would the Court reporter please read back the question.
(The question requested was read back by the reporter.)
A. Yes.
MR. MONOPOLIS: Thank you. Okay. I've got no further questions. I'll tender the witness.
Thank you, Mr. Gronenberg.
MR DEHART: Brian, do you have anything?
Are you ready, Justin?
MR. HEILIG: Yes.
EXAMINATION BY MR. HEILIG:
Q. Mr. Gronenberg, my name is Mike Dehart. I'm with the law firm Freehill Hogan Mahar. On the phone is Michael Fernandez, also with Freehill. We represent Hapag-Lloyd in three of the four cases that you've been designated as O.W. Germany's 30(b)(6) witness today which is

Page 79

- BORIS GRONENBERG -
case 14 Civ 9949, U.S. Oil case; 14 Civ 10027, which is the O'Rourke Marine Services case; and 15 Civ 6718, which is the MV VIENNA EXPRESS case.
I have maybe a minute of questions for you today, so try to keep this brief.
MR. DEHART: I'd like to go back to what's been marked earlier as Exhibit 25. Get that in front of the witness.
MR. HEILIG: It's the general terms and conditions?
MR. DEHART: Yes.
MR. HEILIG: Do you know what the Bates number is?
MR. DEHART: HPL-USOT 3941.
THE WITNESS: Okay. I've got it.
Q. Mr. Gronenberg, you testified earlier that these are the Hapag-Lloyd terms and conditions, correct?
A. Correct.
Q. And Hapag-Lloyd required these terms and conditions to apply to all sales that were done by O.W. Germany to Hapag-Lloyd?
A. Correct.
Q. That would include all spot market

Page 80

- BORIS GRONENBERG -
sales in the United States?
A. Correct.
Q. That would include all spot market sales for bunkers that were supplied at the Port of Houston?
A. Correct.
Q. That would include all spot market sales the Port of Houston during the month or the months of September and October 2014?
A. Correct.
Q. And these Hapag-Lloyd terms and conditions would apply to the exclusion of O.W. terms and conditions?
A. Yes.
Q. So the O.W. terms and conditions would not apply to any sales done by O.W. Germany to Hapag-Lloyd, correct?
MR. MALONEY: Objection to form.
A. Correct.
MR. DEHART: That's all I have for you.
MR. AZMAN: Keith, do you have any additional questions?
MR. LETOURNEAU: I have no further

Page 81

- BORIS GRONENBERG -
questions. Thank you, sir.
MR. AZMAN: Are there any additional questions from anybody else?
MR. HEILIG: I have just a few questions. Just give me one second while I get the documents.
EXAMINATION BY MR. HEILIG:
Q. Good afternoon, Mr. Gronenberg. Just a few follow-up questions for you.
Earlier we looked at Exhibit 1 to Hapag-Lloyd's First Amended Complaint in action 14 Civ 9949.
Do you recall seeing this document earlier today?
A. Yes.
Q. And what is this document?
A. They are a contract.
Q. What does ARA contract stand for?
A. Amsterdam, Rotterdam, Antwerp area contract.
Q. What are the ports of delivery identified in the contract?
A. Antwerp and Rotterdam.
Q. What is the relevancy of this

Page 82

- BORIS GRONENBERG -

contract to bunker transactions taking place at U.S. ports in September and October of 2014?

A. There is no relevance.

Q. Why is that?

A. It is this ARA contract, only refers to supplies in Antwerp and Rotterdam in the period January 1st to December 31st, 2014.

Q. Okay. Now, do you have an understanding of what the differentiation is between a broker and a trader of bunker fuels?

A. Yes.

Q. What is that distinction?

A. The trader sells in his own name and a broker concludes business in the name of the buyer and seller.

Q. Does O.W. Germany or did O.W. Germany fall within one of those two categories?

A. Yes.

Q. Which one?

A. As acting as trader.

Q. Why is that?

A. Because we were buying and selling in our own name.

MR. HEILIG: I'm showing the witness

Page 83

- BORIS GRONENBERG -

a document previously marked as Exhibit 21, O.W. Germany production Bates stamp 9949-000380 through 82.

Q. Mr. Gronenberg, do you recall seeing this document earlier today?

A. Yes.

Q. What is this document?

A. The sales confirmation to Hapag-Lloyd.

Q. Is there a seller identified on this sales order confirmation?

A. Yes.

Q. Who is the seller?

A. O.W. Bunker Germany.

Q. Is there an account identified on this document?

A. Yes.

Q. And what is the account identified on it?

A. Hapag-Lloyd.

Q. Okay. Earlier you were asked whether or not U.S. Oil is identified as a supplier on this document.

Do you recall that?

Page 84

- BORIS GRONENBERG -

A. Yes.

Q. And do you know what the purpose of identifying U.S. Oil as the supplier on this document is?

A. Yes.

Q. What is it?

A. The buyer, Hapag-Lloyd, needs to be informed who is the supplier for coordination of the supply locally at Tacoma.

Q. Why is that?

A. To make the arrangements locally, the agent has to arrange supplies locally and needs to know who the parties are to inform about the vessels arrival and readiness to take bunkers.

MR HEILIG: That's all the questions I have.

MR. AZMAN: Are there any other questions?

MR DEHART: Mike Fernandez, do you have any questions?

MR. FERNANDEZ: I'm good.

MR. AZMAN: Mario, I assume you're good.

MR. MONOPOLIS: That's correct.

Page 85

- BORIS GRONENBERG -

MR. MALONEY: We have no questions at this time.

MR. BURLAGE: No further questions.

MR. LETOURNEAU: No further questions from Houston. Just want to talk about the motion to extend.

MR. AZMAN: Let's go off the record.

(Whereupon, the deposition concluded at 11:25 a.m.)