**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HAPAG-LLOYD AG,

                         Plaintiff,

  - against -

U.S. OIL TRADING LLC, O.W. BUNKER
GERMANY GMBH, and ING BANK N.V.,

                         Defendants.

14-cv-9949 (VEC)

---

U.S. OIL TRADING LLC,

                         Plaintiff,

  - against -

M/V VIENNA EXPRESS, her tackle, boilers,
etc., *in rem*, and M/V SOFIA EXPRESS, her
tackle, boilers, etc., *in rem*,

                         Defendants.

15-cv-6718 (VEC)
(Consolidated)

---

HAPAG-LLOYD AG, as claimant to the
*in rem* defendant M/V VIENNA EXPRESS,

                         Third-Party Plaintiff,

  - against -

O.W. BUNKER GERMANY GMBH, and
ING BANK N.V.,

                         Third-Party Defendants.

**O.W. BUNKER GERMANY GMBH'S**
**MEMORANDUM OF LAW**
**IN SUPPORT OF OMNIBUS MOTION *IN LIMINE***

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND .........................................................................................................................3

    A.  2015–2016: USOT Fails to Disclosure Mr. Proudfoot ....................................................3

    B.  2017–2018: the Court Rejects USOT's Claims, and USOT Appeals.................................4

    C.  2019: USOT Discloses Mr. Proudfoot After Remand .......................................................6

ARGUMENT ................................................................................................................................6

    I.      The Mandate Rule Limits the Scope of Trial...............................................................6

    II.    The Court Should Preclude Testimony About USOT's Alleged
            Communications, Relationships, and Knowledge .......................................................7

    III.   The Court Should Prohibit Cameron Proudfoot from Testifying at Trial .................10

    IV.   USOT May Not Rely On the Deposition Testimony of Thor Nielsen ......................14

CONCLUSION ...........................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*523 IP LLC v. CureMD.Com*,
    48 F.Supp.3d 600 (S.D.N.Y. 2014) .................................................................10

*APL Co. Pte Ltd. v. Blue Water Shipping U.S. Inc.*,
    779 F.Supp.2d 358 (S.D.N.Y. 2011)...............................................................7

*Badolate v. Long Island R.R. Co.*,
    2016 WL 6236311 (E.D.N.Y. Oct. 25, 2016) ............................................ 12-14

*Chakales v. Hertz Corp.*,
    825 F.Supp. 312 (N.D Ga. 1993) ....................................................................9

*Clearlake Shipping Pte Ltd. v. O.W. Bunker (Switzerland) SA*,
    239 F.Supp.3d 674 (S.D.N.Y. 2017)...............................................................5

*Craig v. Sandals Resorts Int'l*,
    69 F.Supp.3d 322 (E.D.N.Y. 2014) .................................................................9

*Downey v. Adloox Inc.*,
    2018 WL 794592 (S.D.N.Y. Feb. 8, 2018)................................................ 11-14

*Farwest Steel Corp. v. Barge Sea-Span 241*,
    828 F.2d 522 (9th Cir. 1987) ....................................................................... 5-6

*Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*,
    697 F.3d 59 (2d Cir. 2012)..............................................................................9

*Garbinski v. Nationwide Mut. Ins. Co.*,
    2012 WL 3027853 (D. Conn. July 23, 2012) .................................................13

*Haas v. Delaware & Hudson Ry. Co.*,
    282 Fed. Appx. 84 (2d Cir. 2008) ............................................................10, 13

*In re Manhattan by Sail, Inc.*,
    2018 WL 6684768 (S.D.N.Y. Sept. 14, 2018)............................................. 6-7

*ING Bank N.V. v. M/V Temara*,
    892 F.3d 511 (2d Cir. 2018)............................................................................5

*Lujan v. Cabana Mgmt., Inc.*,
    284 F.R.D. 50 (E.D.N.Y. 2012) ................................................................ 12-13

*Meacham v. Knolls Atomic Power Lab.*,
  358 Fed. Appx. 233 (2d Cir. 2009)......................................................................7

*New York v. United Parcel Service, Inc.*,
  2016 WL 10672104 (S.D.N.Y. Sept. 8, 2016)...................................... 10, 12-13

*Pal v. New York Univ.*,
  2008 WL 2627614 (S.D.N.Y. June 30, 2008) ...................................................11

*Patterson v. Balsamico*,
  440 F.3d 104 (2d Cir. 2006)........................................................................11, 14

*Pearlman v. Cablevision Sys. Corp.*,
  2015 WL 8481879 (E.D.N.Y. Dec. 8, 2015) ....................................................11

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Live Activists*,
  290 F.3d 1058 (9th Cir. 2002) ..........................................................................15

*Puricelli v. Argentina*,
  797 F.3d 213 (2d Cir. 2015)................................................................................7

*Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*,
  762 F.3d 165 (2d Cir. 2014)................................................................................7

*Syngenta Crop Protection, LLC v. Willowood, LLC*,
  2017 WL 3309699 (M.D.N.C. Aug. 2, 2017)...................................................14

*U.S. Oil Trading LLC v. M/V Vienna Express*,
  911 F.3d 652 (2d Cir. 2018)....................................................................... passim

*Wu v. Metro-North Commuter R.R. Co.*,
  2016 WL 5793971 (S.D.N.Y. Aug. 4, 2016)....................................................14

*Zheng v. Perfect Team Corp.*,
  739 Fed. Appx. 658 (2d Cir. 2018)...................................................................12

## Statutes

46 U.S.C. § 31342...........................................................................................................1

## Rules

Fed. R. Civ. P. 26.................................................................................................... 10-11

Fed. R. Civ. P. 30 ................................................................................................................4

Fed. R. Civ. P. 32 ..............................................................................................................15

Fed. R. Civ. P. 37 ..............................................................................................................10

Fed. R. Civ. P. 43 ..............................................................................................................15

Fed. R. Evid. 402 .................................................................................................................8

Fed. R. Evid. 602 .................................................................................................................8

Fed. R. Evid. 801 ...............................................................................................................10

Fed. R. Evid. 802 .................................................................................................................9

## **Other Authorities**

Rest. (3d) of Agency §2.01 (2006) .......................................................................................9

O.W. Bunker Germany GmbH ("OW Germany") respectfully submits this Memorandum of Law in support of its omnibus motion *in limine* to preclude certain U.S. Oil Trading, LLC ("USOT") evidence pursuant to the mandate rule, Federal Rules of Evidence 402, 602, and 802, and Federal Rules of Civil Procedure 32 and 37.

## PRELIMINARY STATEMENT

The Second Circuit has pinpointed the main question to be tried:  Did Hapag direct OW Germany to use USOT as the physical supplier of bunkers for Hapag's vessels?[1]  OW Germany seeks to prevent USOT from offering evidence that is wholly unrelated to that question, and suffers from other problems as well.  Specifically, this motion asks the Court to preclude USOT from offering: (1) hearsay testimony about communications between USOT and non-parties such as O.W. Bunker USA Inc. ("OW USA") and Norton Lilly International Inc. ("Norton Lilly"); (2) hearsay testimony about the alleged activities of other fuel suppliers; (3) hearsay deposition testimony from a USOT employee, Thor Nielsen, who will testify live at trial; and (4) testimony from a previously undisclosed, surprise witness, Cameron Proudfoot.

USOT contends that is entitled to maritime liens against four Hapag vessels pursuant to Commercial Instruments and Maritime Lien Act ("CIMLA"), 46 U.S.C. § 31342(a).  But subcontractors such as USOT generally are not entitled to such liens, unless they can show (by "significant evidence") an order or direction from the vessel owner/charter that a particular subcontractor be used.[2]  Thus, USOT can establish maritime liens against the vessels only by proving that Hapag directed the general contractor, OW Germany, to use USOT.

---

[1]     *See U.S. Oil Trading LLC v. M/V Vienna Express*, 911 F.3d 652, 666 (2d Cir. 2018) (remanding "the issue of whether Hapag directed that USOT be the physical supplier pursuant to the exception to the subcontractor rule.").

[2]     *See U.S. Oil Trading*, 911 F.3d at 662-63 (explaining the general rule against subcontractor liens and the sole exception to that rule).

USOT cannot prove what Hapag said to OW Germany through the testimony of USOT employees about USOT's communications and relationships.  Yet, USOT intends to call two of its own employees—Lee Weber and Cameron Proudfoot—in an attempt to do exactly that. Their proposed testimony concerns (a) USOT's "communications with O.W. USA," (b) USOT's "relationship with O.W. USA, O.W. Germany, Norton Lilly and Hapag," and (c) USOT's alleged "knowledge of typicals and pricing of other bunker fuel providers along the West Coast of the United States."  *See* Declaration of Justin Heilig, dated October 4, 2011, hereafter "Heilig Decl.," ¶ 7, Ex. 6 (USOT's draft witness list).  None of those topics are probative of what Hapag said to OW Germany.  Worse, USOT's emphasis on those topics is little more than an attempt to relitigate issues that have already been decided by the Second Circuit against USOT, such as the conclusion that Norton Lilly was not authorized to bind Hapag's vessels.  In addition, each topic proposed by USOT is based on inadmissible hearsay.  USOT cannot offer its own out-of-court statements for their truth, let alone the out-of-court statements of non-parties OW USA, Norton Lilly, and "other bunker fuel providers."

Mr. Proudfoot's testimony is problematic for a separate reason.  USOT failed to disclose him as a potential witness until two weeks ago, some ***3.5 years*** after the close of discovery.  Rule 37 requires preclusion in these circumstances.

Finally, USOT also seeks to call a third employee, Thor Nielsen, live at trial <u>and</u> simultaneously offer his deposition testimony.  While Mr. Nielsen is entitled to testify live, nothing in the rules permits USOT to offer his deposition as part of its case-in-chief.

## BACKGROUND

This litigation arises from the supply of marine fuel (known as "bunkers") to four oceangoing vessels owned or chartered by Hapag-Lloyd Aktiengesellschaft ("Hapag"): the *M/Vs Santa Roberta*, *Seaspan Hamburg*, *Sofia Express* and *Vienna Express* (collectively, the "Vessels").  The Second Circuit affirmed this Court's determination that "Hapag ordered the bunkers from O.W. Germany; that O.W. Germany ordered the bunkers from [its affiliate, non-party] O.W. USA; that O.W. USA ordered the bunkers from USOT; and that USOT had no contract with Hapag or O.W. Germany."  *U.S. Oil Trading*, 911 F.3d at 662.  USOT arranged for the delivery of the bunkers to the Vessels by a separate barge company, non-party Olympic Tug & Barge ("OTB").  Hapag paid OW Germany for the *Santa Roberta* delivery, but failed to make payment for the other deliveries.  No one has paid USOT.

Set forth below are the key events relating to this motion.

### A.  2015–2016: USOT Fails to Disclose Mr. Proudfoot

The Court directed all parties to exchange Rule 26 initial disclosures by July 8, 2015.  *See* Dkt. #77 at ¶ 4.3  USOT identified four USOT employees likely to have discoverable information: David E. Rietmann, Robert B. Redd, Thor A. Nielsen, and Lee N. Weber.  *See* Heilig Decl. at ¶ 3, Ex. 1.

OW Germany served deposition notices on USOT in August 2015.  *Id*. at ¶¶ 4-5, Exs. 2 & 3.  Thereafter, USOT told the Court that depositions of its witnesses were *not* warranted or appropriate.  *See* Dkt. #131 at 7.  The Court rejected USOT's arguments and ordered USOT to make its witnesses available.  *See* Dkts. #140 & 141.

---

[3]      All docket citations ("Dkt. __") are to case no. 14-cv-9949 unless noted otherwise.

Mr. Nielsen testified on January 7, 2016, both in his individual capacity and as USOT's corporate representative pursuant to Rule 30(b)(6).  USOT designated Mr. Nielsen to testify on all twelve topics listed in OW Germany's Rule 30(b)(6) deposition notice, including USOT's relationship with Hapag and OW Germany.  *See* Dkt. #255-5 (Nielsen Depo. Tr.) at 64:3-65:9; *see also* Heilig Decl. Ex. 3 (Rule 30(b)(6) deposition notice).

Discovery closed on March 18, 2016. *See* Dkt. #182.  In May 2016, USOT moved for summary judgment on its maritime lien claims against the Vessels.  Thor Nielsen and Lee Weber each submitted declarations in support of USOT's motion, but Cameron Proudfoot did not.  *See* Dkts. #225 & 226.  At the same time, ING Bank N.V. ("ING") moved for summary judgment dismissing USOT's claims.  *See* Dkt. #229.

### B.  2017–2018: the Court Rejects USOT's Claims, and USOT Appeals

On January 9, 2017, this Court ruled that USOT had failed to establish maritime liens against the Vessels.  *See* Dkt #305; *see also* Dkt #312 & 319 (March 3 and March 22, 2017 Amended Opinions and Orders, clarifying that the Court did not grant summary judgment to ING on its own claims, but leaving the January 9, 2017 Opinion & Order unchanged in all other respects).  The Court subsequently entered a Partial Final Judgment on May 2, 2017, dismissing USOT's maritime lien claims.  Dkt. #330.

On March 31, 2017, USOT filed a Notice of Interlocutory Appeal (Dkt. #320) from the Court's March 3 and March 22, 2017 Amended Opinions and Orders.  USOT filed an Amended Notice of Appeal on May 15, 2017 (Dkt. #333), to include the Court's May 2, 2017, Partial Final Judgment (Dkt. #330).

On appeal, USOT argued that it had provided the bunkers on the order of Hapag or an authorized Hapag agent, placing heavy emphasis on its communications with Hapag's port agent, Norton Lilly.  The Second Circuit squarely rejected those arguments:

> We conclude, substantially for the reasons stated by the district court in *Clearlake*, which parallel those leading our Court to answer such a question in the negative in Temara, that **the district court correctly ruled that USOT did not adduce evidence that it was ordered to provide the bunkers by Hapag or by an agent authorized by Hapag to order bunkers**. As described in Part I.B. above, there is no dispute that, for the Subject Vessels, Hapag ordered the bunkers from O.W. Germany; that O.W. Germany ordered the bunkers from O.W. USA; that O.W. USA ordered the bunkers from USOT; and that USOT had no contract with Hapag or with O.W. Germany. Although USOT argues that it complied with a chain of contracts for orders that originated with the Vessels' owner or charterer, we agree with the district court that in each of the contracts requiring USOT to deliver the bunkers, USOT's counterparty was neither Hapag nor O.W. Germany. **USOT in fact acted upon orders placed by an intermediary between itself and O.W. Germany, and the intermediary was not authorized by the Vessels' owner or charterer to order bunkers for the Vessels**.

> We also reject, substantially for the reasons stated by the district court, *see Clearlake*, 239 F.Supp.3d at 689, USOT's argument that either communications from Hapag's port agent Norton Lilly in arranging for delivery, or receipts issued by a Vessel's master or chief engineer acknowledging USOT's bunker deliveries, constituted evidence that USOT provided the bunkers on the order of an agent of the Vessels. *See generally Temara*, 892 F.3d at 521 n.6. **Coordinating delivery and acknowledging receipt do not indicate that the persons so coordinating and/or acknowledging had placed the bunker orders or been authorized by the owner to do so**.

*U.S. Oil Trading*, 911 F.3d at 662 (emphasis added).

However, the Second Circuit remanded on the discrete issue of whether Hapag directed that USOT be the physical supplier pursuant to the "minimal exception" to the general rule against subcontractor liens.  *Id*. at 663.  The Second Circuit recognized that the exception applies "in circumstances where the general contractor was acting as an agent at the direction of the owner to engage specific contractors."  *Id.* (quoting *Farwest Steel Corp. v. Barge Sea-Span 241*,

828 F.2d 522, 526 (9th Cir. 1987)).  Viewing the record in the light most favorable to USOT, the Second Circuit found an issue of fact as to whether Hapag directed OW Germany to use USOT as the physical supplier.  *Id*. at 665.

### C.  September 2019: USOT Discloses Mr. Proudfoot After Remand

By Order dated April 5, 2019, the Court scheduled a bench trial to commence on November 19, 2019, and directed the parties to submit motions *in limine* and a joint pretrial order (with pre-marked exhibits, proposed findings of fact and conclusions of law) by October 1 and 4, 2019, respectively.  *See* Dkt. #352.  The Court subsequently extended those deadlines by one week on September 27, 2019.  *See* Dkt. #357.

On September 23, 2019, USOT and OW Germany exchanged draft witness lists, exhibit lists, and deposition designations.  *See* Heilig Decl. ¶ 7, Exs. 5-8.  USOT also served "Supplemental Initial Disclosures" naming Cameron Proudfoot for the first time—some *3.5 years* after the close of discovery—as a USOT employee likely to have discoverable information that USOT intended to use at trial.  *Id*. at Ex. 8.  USOT further indicated that it intended to call Thor Nielsen both live *and* by deposition, and that it intended to have Lee Weber and Cameron Proudfoot testify about: (1) alleged communications between USOT and non-party OW USA; (2) USOT's alleged relationship and communications with Norton Lilly; and (3) their alleged knowledge of "typicals and pricing of other bunker fuel providers along the West Coast of the United States."  *Id.* at Ex. 6.

### ARGUMENT

### I.  The Mandate Rule Limits the Scope of Trial

As this Court recently acknowledged, a district court "must adhere scrupulously to the mandate of the Court of Appeals on remand."  *In re Manhattan by Sail, Inc.*, 2018 WL 6684768

at *2 (S.D.N.Y. Sept. 14, 2018) (citation omitted); *see also Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014) ("[W]here the mandate limits the issues open for consideration on remand, the district court ordinarily may not deviate from the specific dictates or spirit of the mandate by considering additional issues on remand.").  "The mandate rule bars relitigation not only of issues actually decided on appeal, but of issues that 'fall within the scope of the judgment appealed from but were not raised…."  *In re Manhattan by Sail*, 2018 WL 6684768 at *2 (citation omitted); *see also Puricelli v. Argentina*, 797 F.3d 213, 218 (2d Cir. 2015).  To determine whether an issue may be reconsidered on remand, a district court "must always look to the opinion to interpret the mandate."  *APL Co. Pte Ltd. v. Blue Water Shipping U.S. Inc.*, 779 F.Supp.2d 358, 366 (S.D.N.Y. 2011) (quoting *Meacham v. Knolls Atomic Power Lab.*, 358 Fed. Appx. 233, 235 (2d Cir. 2009) (summary order)).

As discussed more fully below, the mandate rule requires the Court to focus on the question remanded by the Second Circuit: Did Hapag direct OW Germany to use USOT as the physical supplier at Tacoma?  The mandate rule also prohibits USOT from relitigating issues that were decided against it on appeal.  The testimony and documents offered by USOT as evidence at trial should be limited accordingly.

## II.     The Court Should Preclude USOT Testimony About USOT's Alleged Communications, Relationships, and Knowledge

USOT proposes to have Lee Weber and Cameron Proudfoot testify about (a) USOT's "communications with O.W. USA," (b) USOT's "relationship with O.W. USA, O.W. Germany, Norton Lilly and Hapag," and (c) USOT's alleged "knowledge of typicals and pricing of other bunker fuel providers along the West Coast of the United States."  *See* Heilig Decl. Ex. 6.  Such testimony is not probative of whether Hapag directed to OW Germany to use USOT because it

does not address what Hapag said to OW Germany; instead, it concerns what USOT and various non-parties said to each other.  Thus, the testimony must be excluded under FRE 402.

USOT may try to argue that its communications with OW USA and/or Norton Lilly are evidence that Hapag selected USOT, or evidence that Hapag directed one of those entities to select USOT.  But any such argument would flaunt the mandate rule.  The Second Circuit held that USOT "in fact acted upon orders placed by an intermediary" i.e., OW USA, that "was not authorized by the Vessels' owner or charterer to order bunkers for the Vessels."  *U.S. Oil Trading*, 911 F.3d at 662.  The Second Circuit also rejected USOT's argument that its communications with Norton Lilly "constituted evidence that USOT provided the bunkers on the order of an agent of the Vessels."  *Id.*  Thus, USOT cannot argue at trial that it was acting on Hapag's orders as communicated through Norton Lilly's bunker delivery scheduling emails.

Nor can USOT elicit testimony from Messrs. Weber and Proudfoot about *Hapag's* instructions to OW Germany because, as USOT employees, they do not have any personal knowledge on that topic.  USOT's Rule 30(b)(6) corporate representative, Thor Nielsen, testified that there were *no direct communications* between Hapag and USOT prior to the deliveries.  *See* Dkt. #255-5 (Nielsen Depo. Tr.) at 37:6-22 & 39:4-13 (no communications with Hapag apart from "the documentation that has been signed" such as bunker delivery receipts); *id.* at 68:19-69:15 (no communications in which Hapag indicated that OW Germany or OW USA was acting as Hapag's agent in these transactions).  He further testified that USOT's sole basis for believing that "O.W. Bunker" acted as an agent of the Vessels was USOT's *perception* of O.W. Bunker as the "guy in the middle."  *Id.* at 94:3-23.  Thus, neither Mr. Weber nor Mr. Proudfoot is competent to testify about any alleged instruction from Hapag to OW Germany, or any alleged agency relationship between Hapag and OW Germany, under F.R.E. 602.  The question of

whether OW Germany "was acting as an agent at the direction of" Hapag (and therefore had authority to bind Hapag's vessels) is one that requires evidence of Hapag's own words and actions, *i.e.*, its manifestations as the alleged principal. *See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 71 (2d Cir. 2012); *see also Craig v. Sandals Resorts Int'l*, 69 F.Supp.3d 322, 328 (E.D.N.Y. 2014) ("Commonly, an outsider will not be privy to the details of what conversation or conduct took place between a principal and the agent."); *Chakales v. Hertz Corp.*, 825 F.Supp. 312, 314 (N.D Ga. 1993) ("Because the existence of the agency relationship is not within the personal knowledge of a person outside the relationship, a bare assertion of agency by an outsider is merely an unsupported conclusion of law.").[4]

Finally, USOT's proposed testimony must be excluded under FRE 802 because it would consist entirely of hearsay. There is no way for USOT to testify about the prices and specifications offered by "other bunker fuel suppliers" except by offering hearsay statements from those suppliers.[5] Nor is USOT entitled to offer its own out-of-court statements, or the out-of-court statements of non-parties OW USA and Norton Lilly, for the truth of those statements. USOT also cannot seek to introduce emails from Norton Lilly as vicarious Hapag admissions because the Second Circuit already rejected USOT's argument that "communications from Hapag's port agent Norton Lilly in arranging for delivery … constituted evidence that USOT

---

[4]     Although U.S. maritime law recognizes both *actual* and *apparent* agency authority, only *actual* authority is relevant to the exception to the general rule against subcontractor liens. As the Second Circuit has made clear, the exception applies only where there is "an order or direction" by the vessel owner/charterer. *U.S. Oil*, 911 F.3d at 664. Such a command could only be consistent with *actual* authority, "meaning explicit permission from the principal to act on its behalf." *Garanti Finansal*, 697 F.3d at 71 (citing *Rest. (3d) of Agency* §2.01 (2006)).

[5]     There is an additional reason to preclude USOT testimony about other bunker suppliers: USOT never previously disclosed that its employees have discoverable information about that topic. *See* Heilig Decl. Ex. 1 (USOT's Rule 26 disclosures). Allowing USOT to testify at trial about a topic for which it failed to provide discovery would be highly prejudicial to Hapag, OW Germany, and ING.

provided the bunkers on the order of an agent of the Vessels." *U.S. Oil*, 911 F.3d at 662.  The Second Circuit's ruling precludes USOT from now attempting to argue that selecting a physical supplier was within Norton Lilly's limited authority to coordinate the deliveries as Hapag's port agent. Thus, the statements are not admissible under FRE 801(d)(2)(D).

### III.     The Court Should Prohibit Cameron Proudfoot from Testifying at Trial

Rule 26(a)(1)(C) provides in relevant part that a party must serve its initial disclosures within 14 days of the parties' Rule 26(f) conference "unless a different time is set by stipulation or court order."  Rule 26(e)(1)(A) further requires a party to supplement its disclosures in "timely manner."  Such disclosures are meant to apprise a party of the witnesses on whom its opponents intend to rely to support their claims or defenses, so as to prevent unfair surprise and to give that party the opportunity to respond tactically. *New York v. United Parcel Service, Inc.*, 2016 WL 10672104 at *3 (S.D.N.Y. Sept. 8, 2016) (hereafter "*UPS*") (citations omitted); *see also Haas v. Delaware & Hudson Ry. Co.*, 282 Fed. Appx. 84, 86 (2d Cir. 2008) (Rules 26 and 37 are meant to prevent the practice of "sandbagging" an opposing party with new evidence).

Under Rule 37(c)(1), a party who fails to provide information or identify a witness, "as required by Rule 26(a) or (e) … is not allowed to use that information or witness to supply evidence … at trial, unless the failure was substantially justified or is harmless."  This sanction provides a "strong inducement for disclosure of material that the disclosing party would expect to use as evidence…."  Fed. R. Civ. P. 37(c) Advisory Committee Notes (1993).  The party who violates Rule 26 bears the burden to demonstrate that its violation was either substantially justified or harmless.  *UPS*, 2016 WL 10672104 at *4 (quoting *523 IP LLC v. CureMD.Com*, 48 F.Supp.3d 600, 634 (S.D.N.Y. 2014)).  To determine whether preclusion is warranted under Rule 37, a court typically considers four factors: (1) the party's explanation for the failure to comply

with this disclosure requirement; (2) the importance of the testimony of the precluded witness;

(3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new

testimony; and (4) the possibility of a continuance.  *Patterson v. Balsamico*, 440 F.3d 104, 117

(2d Cir. 2006).

Here, there is no question that USOT failed to timely disclose Mr. Proudfoot as a

potential witness.  USOT served its Rule 26 Initial Disclosures on July 8, 2015, and did not

attempt to supplement those disclosures until September 23, 2019—some *3.5 years* after the

close of discovery, some *5.5 months* after this Court set a trial date, and just *12 days* before the

parties were initially scheduled to submit their proposed joint pretrial order.  *Compare* Heilig

Decl. Ex. 1 *with* Ex. 8; *see also* Dkts. #182 & 352.  By any measure, USOT's attempt to

supplement its disclosures did not comply with Rule 26(a) or (e).  *See*, *e.g.*, *Downey v. Adloox*

*Inc.*, 2018 WL 794592 at *1 (S.D.N.Y. Feb. 8, 2018) (disclosure made two months after the

close of discovery violated Rule 26); *Pearlman v. Cablevision Sys. Corp.*, 2015 WL 8481879 at

*11 (E.D.N.Y. Dec. 8, 2015) (disclosure of fact witness 1.5 years after close of discovery was

untimely); *Pal v. New York Univ.*, 2008 WL 2627614 at *3 (S.D.N.Y. June 30, 2008)

(disclosures made after business hours on the last day of discovery were untimely).

Furthermore, when asked by interrogatory to identify various witnesses—including the

witnesses it intended to call at trial—USOT simply directed the parties to its Rule 26 Initial

Disclosures.  *See* Heilig Decl. Ex. 4 (USOT Interrogatory Resp. at ¶7).  Thus, USOT *twice* failed

to identify Mr. Proudfoot in a timely manner.

Although Thor Nielsen briefly mentioned Mr. Proudfoot by name during his deposition,

that reference was insufficient to meet USOT's obligations under Rule 26(a).  Indeed, "numerous

courts in the Second Circuit" have held that the mere mention of a name at a deposition does not

11

satisfy the disclosure requirement. *UPS*, 2016 WL 10672104 at *6; *see also Zheng v. Perfect Team Corp.*, 739 Fed. Appx. 658, 662 (2d Cir. 2018) (quoting *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 72 (E.D.N.Y. 2012) (citing cases)); *Downey*, 2018 WL 794592 at *1. "Rather, to satisfy Rule 26, parties must make an unequivocal statement that they may rely upon an individual … at trial." *Badolate v. Long Island R.R. Co.*, 2016 WL 6236311 at *4 (E.D.N.Y. Oct. 25, 2016) (quoting *Lujan*, 284 F.R.D. at 73). The opposing party's awareness of an individual simply does not suffice. *Id.*

Accordingly, USOT bears the burden to demonstrate that its failure to identify Mr. Proudfoot was either substantially justified or harmless. *UPS*, 2016 WL 10672104 at *4. "Substantial justification means 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure [requirement]," or the existence of a 'genuine dispute concerning compliance [therewith].'" *Lujan*, 284 F.R.D. at 68 (citation omitted). "Harmlessness" means an absence of prejudice to the opposing parties. *Id.* USOT cannot meet its burden to establish either excuse.

First, USOT has no legitimate explanation (let alone "substantial justification") for the failure to identify Mr. Proudfoot in a timely manner. USOT disclosed for the first time *today*, October 8, 2019—i.e., the filing deadline for the parties' motions *in limine*—that Mr. Weber retired from USOT, without providing the date of his retirement. *See* Heilig Decl. ¶ 8, Ex. 9. USOT intimated that Mr. Proudfoot was identified in case Mr. Weber is now unavailable, but it also indicated that USOT "anticipates [Mr. Weber's] cooperation in appearing as a witness at trial." *Id.* Either way, USOT is not entitled to disclose a new witness at the last minute, or keep the parties guessing as to whether that witness will actually testify at trial. Mr. Weber's employment status has no bearing whatsoever on whether USOT reasonably believed either that

it did not have to disclose Mr. Proudfoot or that it did comply with Rule 26 in a timely manner. *See Lujan*, 284 F.R.D. at 68 (defining "substantial justification"). The "thirteenth hour" attempt to disclose Mr. Proudfoot "cuts heavily" against USOT because he is a USOT employee and thus USOT knew or should have known about his role and alleged knowledge even before USOT either appeared (case no. 14-cv-9949) or commenced (case no. 15-cv-6718) these actions several years ago. *Downey*, 2018 WL 794592 at \*1.  Furthermore, the "unintentional oversight" of counsel or a party in failing to disclose a witness does not suffice. *See Haas*, 282 Fed. Appx. at 86; *Badolato*, 2016 WL 6236311 at \*6; *Garbinski v. Nationwide Mut. Ins. Co.*, 2012 WL 3027853 at \*4 (D. Conn. July 23, 2012).

Second, Mr. Proudfoot's testimony is not important to the prosecution of USOT's claims. As discussed at length above, USOT must satisfy the minimal exception to the rule against subcontractor liens, and neither Mr. Weber nor Mr. Proudfoot is qualified to testify about what directions (if any) Hapag gave to OW Germany.  Furthermore, USOT relied upon the declarations of Thor Nielsen and Lee Weber in moving for summary judgment; it did *not* submit any declaration testimony from Mr. Proudfoot.  It stands to reason that if Mr. Proudfoot's testimony were important, USOT would have submitted a declaration from him as well.  In addition, the descriptions of the anticipated testimony from Messrs. Weber and Proudfoot in USOT's proposed witness list are *identical*, meaning that Mr. Proudfoot's testimony would be cumulative or duplicative.  *See* Heilig Decl. Ex. 6.  The Court may therefore "assume that preclusion [would] not work a specific harm to [USOT's] case."  *UPS*, 2016 WL 10672104 at \*7; *see also Downey*, 2018 WL 794592 at \*2 (noting that plaintiffs could introduce testimony from other witnesses in analyzing second *Patterson* factor).

13

Third, USOT cannot demonstrate the absence of harm or prejudice to OW Germany or the other parties to these actions, which have been pending for more than 4.5 years.  Discovery in this matter has been closed since March 2016 and trial is set to begin next month on November 19, 2019.  *See* Dkts. #182 & #352.  Although a continuance (the fourth *Patterson* factor) is "always a possibility," the procedural posture of these cases militates in favor of preclusion. *Downey*, 2018 WL 794592 at *2; *Badolato*, 2016 WL 6236311 at *5 (finding untimely disclosures were not harmless where court would "have to re-open discovery at the 11th hour and on the very eve of trial, to afford Plaintiff an opportunity to depose the additional witnesses."); *Wu v. Metro-North Commuter R.R. Co.*, 2016 WL 5793971 at *9 (S.D.N.Y. Aug. 4, 2016) ("The close of discovery counsels strongly against the granting of a continuance."); *see also Syngenta Crop Protection, LLC v. Willowood, LLC*, 2017 WL 3309699 at *5 (M.D.N.C. Aug. 2, 2017) (declining to reopen discovery where trial was "just a few weeks away, and it would be a serious distraction to all parties' trial preparations to have to prepare for, take, and defend any depositions.").

As demonstrated above, each of the four *Patterson* factors weighs heavily in favor of precluding Mr. Proudfoot from testifying at trial.  USOT cannot carry its burden of proof to demonstrate otherwise.

## IV.    USOT May Not Rely On the Deposition Testimony of Thor Nielsen

USOT indicated in its proposed witness list and exhibit list that it intends to rely on the deposition testimony of Thor Nielsen, its own Rule 30(b)(6) corporate representative, as part of its case-in-chief.  *See* Heilig Decl. Exs. 6 & 7.  The Federal Rules of Civil Procedure preclude USOT from doing so.

Rule 43(a) states that a witness's testimony at trial "must be taken in open court" unless a statute or rule provides otherwise.  Rule 32 governs the use of depositions at trial, and specifies in subpart (a)(1) that all or part of a deposition may be used "against a party" if three conditions are met: (A) the party was present or represented at the deposition; (B) it is used to the extent it would be admissible "if the deponent were present and testifying"; and (C) the use is allowed by subparts (a)(2) through (8).  Rule 32(a)(3) separately provides that an "adverse party" may use the deposition of a party's Rule 30(b)(6) representative for any purpose.  Thus, in sum, Rule 32(a) "clearly favors live testimony over deposition evidence by limiting the use of depositions to three situations: when an adverse party is the deponent; for impeachment purposes; or when the deponent is not available to testify at trial." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Live Activists*, 290 F.3d 1058, 1118 (9th Cir. 2002).

USOT cannot satisfy Rule 32(a)(1) because it does not seek to use Mr. Nielsen's deposition testimony against itself.  The same goes for Rule 32(a)(3), which allows only an *adverse party* to use deposition testimony for any purpose.  Moreover, subparts (a)(1)(B) and (a)(4) both contemplate that the deponent will not be present at trial.  Here, USOT intends to call Mr. Nielsen to testify in person.  *See* Heilig Decl. Ex. 6.  Thus, Rules 32 and 43 preclude USOT from relying on Mr. Nielsen's deposition testimony at trial.

## <u>CONCLUSION</u>

The Court should preclude USOT from calling Cameron Proudfoot, pursuant to Federal Rule of Civil Procedure 37.  Likewise, the Court should preclude USOT from calling any of its employees to testify about (a) USOT's communications with non-parties Norton Lilly, OW USA, and other unidentified bunker fuel suppliers, and (b) the alleged activities of such non-parties, pursuant to Federal Rules of Evidence 402 and 802.  Finally, the Court should not permit

USOT to present Thor Nielsen's Rule 30(b)(6) deposition testimony as part of its case-in-chief,

pursuant to Federal Rule of Civil Procedure 32(a) and Federal Rule of Evidence 802.


Dated:  October 8, 2019

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP

 /s/ Jacob Hollinger
Timothy W. Walsh
Darren Azman
Jacob Hollinger
340 Madison Avenue
New York, NY 10173
Telephone:  212-547-5400
Facsimile:  212-547-5444

- and –

HILL RIVKINS LLP

 /s/ Justin M. Heilig
Justin M. Heilig
45 Broadway, Suite 1500
New York, NY 10006
Telephone:  212-669-0600
Facsimile:  212-669-0698

*Attorneys for O.W. Bunker Germany GbmH*

**<u>Certificate of Service</u>**

I hereby certify that on October 8, 2019, I caused the foregoing document to be filed on the Court's CM/ECF system, thereby effecting service on all counsel of record in this action.

 /s/ Justin M. Heilig